# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTY OF NORFOLK, NOVEMBER TERM 1853, AT DEDHAM.

————

PRESENT:

Hon. LEMUEL SHAW, CHIEF JUSTICE.
Hon. CHARLES A. DEWEY,
Hon. GEORGE T. BIGELOW,
Hon. BENJAMIN F. THOMAS, } JUSTICES.
Hon. PLINY MERRICK,

————

## ALFRED DANIELS & another *vs.* HUDSON RIVER FIRE INSURANCE COMPANY.

A statement in an application for insurance is to be considered a representation rather than a warranty, unless it is clearly made a warranty by the terms of the policy, or by some direct reference therein.

Misrepresentation in the law of insurance is the statement of something as fact, which is untrue, and which the assured states, knowing it to be untrue, and with intent to deceive, or which he states positively as true, not knowing it to be true, and which has a tendency to mislead ; such fact being in either case material to the risk.

Concealment is the designed and intentional withholding of any fact material to the risk, which the assured in honesty and good faith ought to communicate ;

and any fact is material, the knowledge or ignorance of which would naturally influence the insurer in making the contract at all, or in estimating the degree and character of the risk, or in fixing the rate of insurance.

If a statement, in an application for insurance, is not responsive to any inquiry made, the burden of proof is on the insurance company to show that such statement was material to the risk, and that it had been violated by the assured; which are questions of fact for the jury.

Neglect by the servants of one assured, to obey his orders that the water-casks in the building should be kept full, and which the assured had represented, but not warranted, to be "kept full constantly," does not avoid the policy.

To an inquiry in an application for insurance upon a manufactory, "Are there casks in each loft constantly supplied with water?" the answer was, "There are in each room casks kept full constantly." *Held*, that evidence was admissible for the assured, that in the general use of language among manufacturers, the whole of a loft or story, appropriated to a particular department, was called "one room," although the same was divided by partitions with doors; and that the meaning of the word "room," and whether there was any such general use of language were questions for the jury, and not for the court.

*Held also*, that if such use of the word "room" was general among manufacturers, it need not be known and general among insurers, in order to affect a contract of insurance upon manufacturing property; for the insurers must be presumed to have so understood it, when they insured such property.

The defence to an action on a policy of insurance being that water-casks were not kept in each room of the building insured, according to a representation by the assured, but only in each story of the building, an expert may be asked by the plaintiff whether the existence of a partition in a story increased the risk, or created a necessity for another cask, if there were openings in it sufficient to roll a cask of water through easily.

THIS was an action upon a policy of insurance against fire. At the trial in this court, February term, 1853, held by *Thomas*, J., the plaintiffs having proved a *primâ facie* case, the defendants, a corporation chartered by the laws of the state of New York, relied upon a violation of the statements in the application, numbered 22 and 24. The twenty-second interrogatory was: "Is there a good forcing-pump in the factory, designed expressly for putting out fire, and at all times in condition for use?" The answer was: "A small force-pump for filling barrels, and with hose to reach each room." The twenty-fourth question inquired, "Are there casks in each loft constantly supplied with water? If there are, what is their capacity, and how many buckets are kept to each cask for use in case of fire?" *Ans.* "There is in each room, casks of forty-two gallons each, kept full constantly: also, twenty-

four buckets in mill." The policy also declared that it was " made and accepted in reference to the terms and conditions hereto annexed, which are to be used and resorted to, in order to explain the rights and obligations of the parties hereto, in all cases not herein otherwise specially provided for." The second clause of the first article of the conditions of the policy provided, that " if any person insuring any building or goods in this office shall make any misrepresentation or concealment, &c., such insurance shall be void and of no effect." The assured also covenanted in said application, " that the foregoing is a just, full, and true exposition of all the facts and circumstances in regard to the condition, situation, value, and risk of the property insured."

The defendants contended that these statements in the application were warranties or conditions, and if not strictly and literally true at the time of the application, the policy was void ; and if then true, and the plaintiffs afterwards ceased to comply with them, the policy thereupon became void; whether the same were, or were not, material to the risk. But the presiding judge instructed the jury, that the statements were not warranties, requiring an exact and literal compliance, but that they were representations, and as such, they must have been substantially true and correct as to things done, or existing at the time the policy was issued ; and so far as they related to the future, — to things to be done, and rules and precautions to be observed, — they were stipulations to be fairly and substantially complied with. And the judge read to the jury, to illustrate what was meant by " substantial compliance," the opinion of the court in *Houghton* v. *Manufacturers' Mutual Fire Insurance Company*, 8 Met. 114.

With reference to the statement as to a force-pump, the presiding judge instructed the jury that the representation was, that there was a force-pump used for filling water-barrels, and fit for that purpose ; that the statement not being responsive to the interrogatory, the burden of proof was on the defendants to show its materiality to the risk, and that whether it was material or not, and whether it had been com plied with or not, were questions of fact for the jury.

With reference to the representation and stipulation that a water-cask should be kept in each room, the presiding judge instructed the jury that if the plaintiffs established a rule that such water-casks should be kept full, and employed servants to execute such rule, and if, through the negligence of such servants at any time they were not full, such negligence would not avoid the policy. The judge illustrated his meaning by reference to a common provision in policies of insurance against fire, that ashes should be taken up in iron hods : If the insured provided iron hods for that purpose, and directed his servants to use them, his policy of insurance would not be avoided, because his servants, on any occasion, against his direction, should take up the ashes in a wooden pail, even if such carelessness was the cause of the fire ; that it was against the results of such carelessness, that policies of insurance were, among other things, intended to secure the owner of the property insured.

The defendants introduced evidence tending to prove that the basement story of the factory was divided by a partition, which separated it into two apartments, with a door between them, in one of which stock was stored, and in the other two machines, called rag-pickers, were in operation, and that in the apartment where such machines were kept, there was no water-cask ; and also, that in the story next above the basement, there was a small apartment where the lappers were in operation, partitioned off from, and with two doors connecting it with the remainder of this story, and that in this apartment there was no water-cask ; and also, that in the two stories above the last, the water-casks stood in the adjoining entry ways, separated by doors from the main room, and not in the main rooms. There was evidence tending to show that these partitions were slightly set up, and imperfectly fastened, so as to be easily taken down.

The presiding judge permitted the plaintiffs, against the objection of the defendants, to introduce evidence tending to show that in the general use of language among manufacturers, the whole of a loft or story, appropriated to a particular branch, was called one room, although the same was divided

by partitions with doors in them. The defendants contended that the meaning of the word "room" in the application, was a question for the court, and also that the court should decide whether there was such a general use of language as the plaintiffs claimed, and that if there was such use of language, it was insufficient, unless it was known and general among insurers as well as manufacturers. But the presiding judge instructed the jury that the meaning of the word "room" was a question for them to determine, and that in such determination, they might look to the contract itself, to the structure of the building, to the partitions, as to being slight or substantial, temporary or permanent; and to the general use of language among manufacturers.

The plaintiffs called a witness, John Adams, who had been engaged for many years as agent for numerous insurance companies, in examining premises proposed to be insured, their exposure to fire, and the facilities of extinguishing the same, and on such examinations, to accept or reject risks, or to judge thereon, and of the rates of premium, and who carefully examined the premises covered by this policy at the time of the application; and they were permitted to ask him, under objection, whether the existence of such a partition as above described, in the basement story, if there were openings through it sufficient to permit a cask of water to be easily rolled through, increased the risk, or created a necessity for another cask, and he answered in the negative.

The plaintiffs were permitted to inquire of said Adams whether he made an examination of said factory, when he received the application, and whether any part of such application was in his handwriting, and whether the objects and things described in the application were in the mill when he made the examination, and whether the plaintiffs pointed out to him a force-pump, and stated its use and purpose, when so pointing it out, and whether the witness was paid by the agent of the defendants for making the examination and receiving the application. But this evidence was admitted to prove the existence of the objects in the mill described in the application; to show the relation of the witness to the parties to the

suit, and his means of observation and recollection; and not to limit, qualify, or control the written application; the jury being instructed that for the representations and stipulations of the plaintiffs, upon which the policy was issued, they were to look only to the written application; and by that written application, the plaintiffs must be bound, and the testimony could have no effect to limit or control such written contract.

It appeared in evidence that the application was received by said Adams, at Medway, and by him handed to one Charles Holland, an agent of the defendants at Worcester, and that some days afterwards said Holland handed the policy to Adams, and the latter forwarded the same to the plaintiffs at Medway, who paid the premium to said Adams, and Adams paid it over to Holland. The verdict was for the plaintiffs, and to all of the foregoing rulings, instructions, and refusals to give instructions, the defendants excepted.

*P. C. Bacon & D. Foster,* for the defendants. 1. The statements in the application are warranties as to existing facts, and as to their continuance. *Roberts* v. *Chenango County Mut. Ins. Co.* 3 Hill, 501; *Burritt* v. *Saratoga County Mut. Fire Ins. Co.* 5 Hill, 188; *Trench* v. *Chenango County Mut. Ins. Co.* 7 Hill, 122; *Jennings* v. *Chenango County Mut. Ins. Co.* 2 Denio, 75; *Sexton* v. *Montgomery County Mut. Ins. Co.* 9 Barb. 191; *Kennedy* v. *St. Lawrence County Mut. Ins. Co.* 10 Barb. 285; *Gates* v. *Madison County Mut. Ins. Co.* 2 Comst. 44; *Richards* v. *Protection Ins. Co.* 17 Shepl. 273; *Williams* v. *New England Mut. Fire Ins. Co.* 1 Reding. 219; *Vose* v. *Eagle Life & Health Ins. Co.* 6 Cush. 42.

2. The statement as to the force-pump was responsive to the interrogatory; but whether it was or was not responsive to that particular interrogatory, its materiality when other parts of the application and contract are considered, must be taken to have been agreed by the parties. They were, by the terms of the contract, estopped from disputing its materiality. Under the circumstances, it was a question for the court. The burden of proof as to its materiality was not upon the defendants. 1 Phillips on Ins. §§ 539–542; *Dennison* v. *Thom-*

*aston Mut. Ins. Co.* 2 Appleton, 125; *Davenport* v. *New England Mut. Fire Ins. Co.* 6 Cush. 341.

3. The instructions of the presiding judge in regard to the water-casks to be kept in each room, that if the plaintiffs established a rule that such casks should be kept full, and employed servants to execute such rule, and that if through the negligence of such servants at any time, they were not full, such negligence would not avoid the policy, was incorrect. 1 Phillips on Ins. § 867; *Duncan* v. *Sun Fire Ins. Co.* 16 Wend. 488; *Houghton* v. *Manufacturers' Mut. Fire Ins. Co.* 8 Met. 114; *Nicol* v. *American Ins. Co.* 3 Wood. & Min. 529; *Clark* v. *Manufacturers' Ins. Co.* 8 How. 235.

4. The meaning of the word "room" was a question for the court. *Brown* v. *Brown*, 8 Met. 576. If for the jury, they should have been instructed that the common meaning of the word "room" could not be altered by usage, unless it was general among insurers as well as manufacturers. *Eaton* v. *Smith*, 20 Pick. 156; *Bodfish* v. *Fox*, 10 Shepl. 90.

5. The question whether the partition in the basement increased the risk or created a necessity for another cask of water, was not a proper subject for the opinion of an expert. *Jefferson Ins. Co.* v. *Cotheal*, 7 Wend. 72; *Robertson* v. *Stark*, 15 N. H. 109; *Lincoln* v. *Barre*, 5 Cush. 590; *New England Glass Co.* v. *Lovell*, 7 Cush. 319.

*R. Choate & J. J. Clarke*, for the plaintiffs.

SHAW, C. J. This is an action of contract, to recover on a policy of insurance, made by the defendant company, for a loss by fire. The insurance was upon the plaintiffs' factory building in Medway, and the machinery and stock. The defendant company have their office and principal place of business at Waterford, N. Y. The policy, for one year, purports to be dated there, and signed by the president and secretary; but the negotiation was had by an agent of the company in Massachusetts, and by the terms of the policy, it was not to be valid unless countersigned by their agent at Worcester, and it was so countersigned and delivered by him. There can be no doubt that this is a contract made in Massachusetts, and to be governed and construed by the laws of this state; for

Daniels & another *v*. Hudson River Fire Insurance Company.

though it was dated in New York and signed by the president and secretary there, yet it took effect, as a contract, from the counter-signature and delivery of the policy in Massachusetts. It is to be interpreted according to the laws, and with reference to the usages and the practice of this state, in the same manner with any other Massachusetts policy of insurance against fire.

It came to trial before one of the justices of this court; several exceptions were taken by the defendants to the directions and decisions of the judge. These are now brought before the whole court by bill of exceptions.

1. The defendants, relying upon a violation of the statements in the application, contended that these statements were warranties or conditions, and if they were not strictly and literally true at the time of the application, that the policy was void; and that if they were then true, and the plaintiffs afterwards ceased to comply with them, the policy thereupon became void, whether the same were or were not material to the risk. But the presiding judge instructed the jury, that the statements of the application were not warranties, requiring an exact and literal compliance, but that they were representations; and as such, must have been substantially true and correct as to things done, or existing, at the time the policy was issued, and that so far as they related to the future — to things to be done, and rules and precautions to be observed — they were stipulations, to be fairly and substantially complied with.

The court are of opinion, that looking at the policy and the application, this instruction was correct. There is undoubtedly some difficulty in determining by any simple and certain test what propositions in a contract of insurance constitute warranties, and what representations. One general rule is, that a warranty must be embraced in the policy itself. If by any words of reference, the stipulation in another instrument, such as the proposal or application, can be construed a warranty, it must be such as make it in legal effect a part of the policy. In a recent case, it was said that "the proposal or declaration for insurance, when forming a part of

the policy, has been held to amount to a condition or war-ranty, which must be strictly true or complied with, and upon the truth of which, whether a misstatement be intentional or not, the whole instrument depends." *Vose* v. *The Eagle Life & Health Ins. Co.* 6 Cush. 47. But no rule is laid down in that case, for determining how or in what mode such state-ments contained in the application, or in answer to interroga-tories, shall be embraced or incorporated into the policy, so as to form part thereof.

The difference is most essential, as indicated in the defini-tion of a warranty in the case last cited, and as stated by the counsel for the defendants in the prayer for instruction. If any statement of fact, however unimportant it may have been regarded by both parties to the contract, is a warranty, and it happens to be untrue, it avoids the policy; if it be construed a representation, and is untrue, it does not avoid the contract if not wilful, or if not material. To illustrate this; the ap plication, in answer to an interrogatory, is this: " Ashes are taken up and removed in iron hods;" whereas it should turn out in evidence, that ashes were taken up and removed in copper hods; perhaps a set recently obtained, and unknown to the owner. If this was a warranty, the policy is gone; but if a representation, it would not, we presume, affect the policy, because not wilful or designed to deceive; but more especially, because it would be utterly immaterial, and would not have influenced the mind of either party in making the contract, or in fixing its terms. Hence it is, we suppose, that the leaning of all courts is, to hold such a stipulation to be a representation, rather than a warranty, in all cases, where there is any room for construction; because such construction will, in general, best carry into effect the real intent and pur-pose which the parties have in view, in making their contract.

In the present case, the only clause in the policy having any bearing upon this question, is this: " And this policy is made and accepted in reference to the terms and conditions hereto annexed, which are to be used and resorted to, in order to explain the rights and obligations of the parties hereto, in all cases not herein otherwise specially provided for" Here

is no reference whatever to the application or the answers accompanying it; the only reference is to the conditions annexed to the policy. In looking at these conditions, 2d clause of art. 1, the provision is, that " if any person, insuring any building or goods in this office, shall make any misrepresentation or concealment, or, &c., — mentioning several other cases, all of which would tend to increase the risk, — such insurance shall be void and of no effect."

The terms " misrepresentation " and " concealment " have a known and definite meaning in the law of insurance ; and it is that meaning and sense, in which we are to presume the parties intended to use them in their contract of insurance, unless there is something to indicate a different intent. " Misrepresentation " is the statement of something as fact, which is untrue in fact, and which the assured states, knowing it to be not true, with an intent to deceive the underwriter, or which he states positively as true, without knowing it to be true, and which has a tendency to mislead, such fact in either case being material to the risk. " Concealment " is the designed and intentional withholding of any fact material to the risk, which the assured, in honesty and good faith, ought to communicate to the underwriter; mere silence on the part of the assured, especially as to some matter of fact which he does not consider it important for the underwriter to know, is not to be considered as such concealment. *Aliud est celare, aliud tacere.* And every such fact, untruly asserted or wrongfully suppressed, must be regarded as material, the knowledge or ignorance of which would naturally influence the judgment of the underwriter in making the contract at all, or in estimating the degree and character of the risk, or in fixing the rate of the premium. If the fact so untruly stated or purposely suppressed is not of this character, it is not a " misrepresentation " or " concealment " within this clause of the conditions annexed to the policy.

But further ; the clause in this policy has none of the characteristics of a warranty, because it is not, in its own terms, or by reference to the terms and conditions annexed, an absolute stipulation for the truth of any existing fact, or for the

36 *

adoption of any precise course of conduct for the future, making the truth of such fact, or a compliance with such stipulation, a condition precedent to the validity of the contract, or the right of the assured to recover on it. The policy is made in reference to the terms and conditions annexed; but these are referred to, not as conditions precedent, but " to be used and resorted to, in order to explain the rights and obligations of the parties hereto, in cases not herein otherwise specially provided for." They are not to control or alter any express provision in the contract, or become parts of the policy; but they are statements in a collateral document, which both parties agree to, as an authoritative exposition of what they both understand as to the facts, on the assumption and truth of which they contract, and the relations in which they stand to each other.

The court are of opinion, therefore, that the statements in this application were not warranties, and could have no greater effect than that of representations, and that the judge was right in giving such instruction to the jury.

2. Another exception was taken to the direction of the judge in regard to the force-pump, which is, that the judge erroneously ruled that the burden of proof was on the defendants, to prove its materiality to the risk, and also, whether it had been complied with or not. This was correct. Whether the answer was responsive to the question or not, it could have only the character of a representation ; and, therefore, if the defendants rely either upon the falsity of the representation, or the failure to comply with an executory stipulation, it is upon them to prove it; and it is a question of fact for the jury, in either aspect.

3. With respect to the representation and stipulation that a water-cask should be kept in each room, the presiding judge instructed the jury, that if the plaintiffs established a rule that such water-casks should be kept full, and employed servants to execute such rule, and if, through their negligence at any time, they were not full, such negligence of servants would not avoid the policy.

We understand it to be a well-settled principle in the law

of fire insurance, and, indeed, the strong tendency of modern judicial decisions in cases of marine insurance is in the same direction, that the negligence of subordinates, many of whom must often be employed, without much knowledge of them by employers, is one of the perils insured against. In *Chandler* v. *Worcester Mutual Fire Ins. Co.* 3 Cush. 328, the rule is laid down thus: " The general rule unquestionably is, in case of insurance against fire, that the carelessness and negligence of the agents and servants of the assured constitutes no defence." The question there was, whether gross negligence on the part of the assured himself, gross carelessness, equivalent in legal estimation to a wilful intent to burn the building, would be a good defence. It seems difficult to see how an incorporated company, who must act by agents and servants, could otherwise comply with their representations. If, indeed, such servants and agents are habitually or frequently careless in performing their duties, it may become negligence on the part of the employers, whose duty it is to have a reasonable vigilance over them, and employ faithful servants.

4. The next exception turns on the representation that a water-cask was kept in each room, and the admission of evidence tending to show in what sense the parties understood the word " room." This is a point which seemed most doubtful, and which has had the particular attention of the court.

The question arises upon the representation made in answer to the twenty-fourth interrogatory. It may be remarked in passing, that there is some discrepancy between the question and answer. Whether designed or not, does not appear. The question is, " Are there casks in each loft constantly supplied with water ? " The answer is, " There is in each room, casks of forty-two gallons each kept constantly full." If the plaintiffs intended to conform their answer to the question proposed, then it is manifest, that in their view the word " loft " in the question, and " room " in the answer, would mean the same thing, and the effect of the answer would be, that a cask was kept in each loft. This would raise another question, whether the term " loft " would include the basement story, or only the chambers over the basement the " rooms aloft ? "

Or, did it mean each story? These considerations are, perhaps, not material, except that they have some tendency to show that the word "room" was used without any very precise or definite meaning. The evidence offered for the purpose of falsifying this representation was, that there was in the basement story a partition, setting off a part for a particular purpose, in which no water-cask was kept,—that in the next story above there was a small apartment partitioned off, in which there was no water-cask; and in the two stories above, the water-casks stood in the entry ways by the doors of the main rooms, and not in the main rooms. If the plaintiffs, in answering the interrogatory as put, intended to say that there is a cask of water kept for each loft, or each story, the jury might well find that the representation was true; if they intended to use the word "room" in a narrower sense, so as to mean more than one apartment, in each loft or story, then it becomes necessary to inquire what was the extent of the word "room" as used in this answer. The word is certainly a familiar one in the English language, and as ordinarily used and construed, as all words must be, by the subject-matter and the context, is not likely to be misunderstood, yet it is not without some considerable varieties of meaning. Apply it to a dwelling-house, and suppose one, in offering a house to be sold or let, should represent that there is a fireplace in every room. Suppose there is a cellar, or an attic, with or without windows, are they rooms? Or suppose a large apartment into which the front door opens, used for the double purpose of an entry, and for a sitting-room in warm weather, and furnished for that purpose; is it a room within the representation that there is a fireplace in it? Or suppose above stairs, one or more small apartments, capable of being used as a closet or clothes-press, or for a bedroom; would the representation be falsified by showing that either of these divisions of the house had no fireplace in it? The language might be somewhat ambiguous, and require aid to ascertain its meaning.

The interpretation of written contracts, indeed, of all written documents, is a question of law for the court; and it is

Daniels & another *v.* Hudson River Fire Insurance Company.

of great importance that the meaning of written evidence should not be altered or varied by parol evidence. But this presupposes that the words are used in their ordinary and normal sense, according to the established rules of the language; but if they are foreign words, or words used in a peculiar, unusual, or technical sense, evidence may be proper to show their meaning, and then it is the province of the court to declare and apply the law, according to the true meaning of the language as thus ascertained. The rule is laid down, in the case of *Eaton* v. *Smith,* 20 Pick. 156, thus: " When a new and unusual word is used in a contract, or when a word is used in a technical or peculiar sense, as applicable to any trade or branch of business, or to any particular class of people, it is proper to receive evidence of usage, to explain and illustrate it, and that evidence is to be considered by the jury; and the province of the court will be, to instruct the jury what will be the legal effect of the contract or instrument, as they shall find the meaning of the word modified or explained by the usage."

This principle seems to be intelligible enough, but the difficulty in applying it as a practical rule is this: the words severally and as first read seem plain, but like other matters of latent ambiguity, it is when they come to be applied to the subject-matter, that the ambiguity becomes apparent. Then it is, that evidence of usage or other evidence *aliundé,* becomes competent and admissible, to show the sense in which the words were used in the particular written paper. It must depend, therefore, much upon the circumstances of each case, and the posture of the evidence already admitted in the trial, whether such evidence *aliundé* ought to be admitted. In the present case, we are of opinion that there was sufficient uncertainty and ambiguity in the representation in question, to warrant the introduction of evidence of usage, and it was a question of fact for the jury to decide, whether, according to the true meaning of the language used, the representation was substantially true, when made, and substantially complied with afterwards.

One other ground was taken by the defendants in this

Daniels & another *v.* Hudson River Fire Insurance Company.

branch of the case, thus: The defendants contended not only that the meaning of the word "room" in the application was a question of law for the court to decide, and also whether there was such a general use of language; but also, that if there were such use of language, it was insufficient, unless it was known and general among insurers, as well as manufacturers. Such a direction, we think, would not have been conformable to the rules of law. The general rule on that subject is, that if any person, or any company, foreign or domestic, shall engage in any branch or department of business, they must be presumed to be acquainted with the rules and usages of such business, to be conversant with the language employed in it, whether strictly technical or not. When, therefore, the defendant company undertook to insure a manufactory in Massachusetts, with the machinery and stock therein, they must be presumed to be acquainted with the structure and arrangement of such building, and the distribution of the apartments within it, with a view to its adaptation to the business to be therein carried on, and with the use of the language employed by the owners, superintendents, and persons employed therein. If, therefore, the language of this representation was understood in a particular manner by manufacturers, according to which understanding the representation was true, the legal presumption is that it was so understood by the insurers, in their contract.

5. Exception was taken to the admission of the witness Adams as an expert; but no sufficient ground has been shown that his admission was erroneous; nor does it appear to us that the questions permitted to be put to him, and the answers he gave to them, for the limited purpose to which they were confined by the instructions given thereon to the jury, are open to exception. *Exceptions overruled.*