## VINCENT R. LoCICERO[1] vs. THE HARTFORD INSURANCE GROUP.

No. 86-1356.

Middlesex. November 12, 1987. — February 1, 1988.

Present: GREANEY, C.J., CUTTER, & KASS, JJ.

*Insurance*, Construction of policy, Health and accident, Unfair act or practice. *Attorney at Law*, Withdrawal. *Practice, Civil*, Summary judgment, Party pro se.

In a civil case, on a motion for summary judgment, no question of material fact was presented with respect to the definitions of "hospital" and "convalescent hospital" as set forth in an insurance contract, where the construction of the contract was a question of law for the judge. [340-341]

In a civil case, no error appeared in the judge's construction, on a motion for summary judgment, of the unambiguous provisions of an insurance contract. [341-342]

Summary judgment was properly entered in favor of an insurance company on a general allegation in the complaint that the company had failed to pay certain claims within a reasonable time, where the record before the court did not demonstrate a pattern of late payments. [342-343]

No abuse of discretion appeared in the judge's denial of a motion for leave to withdraw filed by a plaintiff's counsel or in a second judge's striking from the record a pro se filing by the plaintiff, where both the motion and the filing were untimely, inasmuch as arguments on a motion for summary judgment had already been heard. [343-344]

CIVIL ACTION commenced in the Superior Court Department on November 27, 1985.

A motion by defendant's counsel for leave to withdraw was heard by *William Highgas, Jr.*, J., and the case was heard by *Andrew G. Meyer*, J., on a motion for summary judgment.

*John K. Leslie* for the plaintiff.

*Jacqueline Y. Parker* (*Richard L. Neumeier* with her) for the defendant.

---

[1] Individually and as conservator of the estate of June B. LoCicero.

KASS, J. Upon motion of the defendant, The Hartford Insurance Group (Hartford), a judge of the Superior Court ordered summary judgment dismissing the action. The plaintiff's primary complaints were that Hartford had failed entirely to pay certain claims made by the plaintiff on a health care insurance policy covering the plaintiff and his wife, June, and that, as to other claims which Hartford had ultimately acknowledged, it had been impermissibly tardy in paying them. The secondary complaints flowed from the primary ones; they alleged violations of c. 93A and c. 176D, consequential injury, and loss of consortium.

1. *Extent of coverage for rehabilitative care.* Mrs. LoCicero suffered a severe cerebral hemorrhage on September 14, 1983. For three months she was hospitalized for acute care in St. Joseph's hospital in Lowell, an institution to which, after four months of rehabilitative care, she returned for treatment of pneumonia. After her second discharge, Mrs. LoCicero became a patient at The Greenery, a health care institution in Brighton which has a program of aggressive rehabilitation therapy for patients with brain injury. The level of reimbursement to which the LoCiceros are entitled for the cost of care at The Greenery is the largest dollar issue between the parties. Under the health insurance policy which covered the LoCiceros, Hartford agrees (nuances aside) to reimburse in full charges levied by a hospital. In the case, however, of a convalescent hospital, Hartford will pay (again, nuances aside) one-half "the most common daily charge for semi-private accommodations in the hospital in which the individual was confined immediately preceding confinement in the "convalescent hospital." Hartford applied the "convalescent hospital" rate to The Greenery, which resulted in $10,545 less than full reimbursement for the period in question.

LoCicero sets up his difference with Hartford's characterization of The Greenery as a convalescent hospital as a dispute over a material fact. At the time Hartford's motion for summary judgment was brought forward for resolution, the judge had before him the pleadings, answers to Hartford's interrogatories, an affidavit in support of the motion for summary judgment,

and a counter affidavit from LoCicero.[2] Those documents disclose no controversy about the nature of the medical services rendered at The Greenery. The controversy, rather, is about which category defined in the insurance contract pertained to The Greenery.[3] Construing the insurance contract, therefore, is a question of law for the court. *Cody* v. *Connecticut Gen. Life Ins. Co.*, 387 Mass. 142, 146 (1982). *Jefferson Ins. Co.* v. *Holyoke*, 23 Mass. App. Ct. 472, 475 (1987). See *Rew* v. *Beneficial Standard Life Ins. Co.*, 41 Wash.2d 577, 581 (1952) (question whether nursing home was a hospital within the coverage of the policy is one solely of law).

A "hospital," under the definition in the Benefits Book (1982) (see note 3) is "an institution which meets all of the following tests. (a) . . . maintains diagnostic and therapeutic facilities for surgical and medical diagnosis and treatment . . . . In no event . . . will the word 'hospital' include . . . a convalescent hospital." The Benefits Book proceeds to define a "convalescent hospital" as "an institution . . . which 1. provides . . . 24-hour skilled nursing service . . . and 5. qualifies as an 'Extended Care Facility' under the Health Insurance provided by Title XVIII of the Social Security Act as amended."

It is undisputed that The Greenery is a 200-bed skilled nursing center which maintains a specialty of rehabilitating head-injured patients. The facility is licensed as a skilled nursing center. On its letterhead it announces that it is a "Medicare approved extended care facility." The Greenery maintains no surgical service. The highly valuable function which it performs is to give post-acute treatment. Diagnosis and surgery occurred

---

[2] No reference to the latter document appears on the docket, a circumstance which is unremarkable because the affidavit was attached to a memorandum presented to the judge on the day of argument. We are satisfied from the record that LoCicero's affidavit was available to the motion judge. Under Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974), adverse affidavits are to be served at least a day *prior* to the motion hearing. The judge was free, therefore, to disregard LoCicero's affidavit.

[3] The insurance contract, as such, is not in the record, but the parties agree that the pertinent contract provisions appear in a "Policy Benefits Book" (1982) available to and studied by LoCicero and his lawyers. Excerpts from two editions of the Policy Benefits Book are reprinted in the record.

at St. Joseph's Hospital. There Mrs. LoCicero received neuro-logical examination including a computerized tomography (CT) scan and a left frontal temporal craniotomy. After discharge for rehabilitative and chronic care, she developed the pneumonia which required her readmission to St. Joseph's Hospital. Following that second acute phase, she went to The Greenery. Care at The Greenery goes beyond merely making the patient comfortable; there is an effort at restoration of brain function through stimuli and physical therapy. That care is long term, in the quite orthodox sense of convalescence, i.e., a gradual return to health. See American Heritage Dictionary 319 (2d college ed. 1982); Webster's Third New Intl. Diction-ary 497 (1971). We conclude that Hartford correctly placed The Greenery in the category of convalescent hospital. See *McManus* v. *Equitable Life Assur. Soc.*, 583 S.W.2d 271, 272-273 (Mo. Ct. App. 1979); *Taylor* v. *Phoenix Mut. Life Ins. Co.*, 453 F. Supp. 372, 379-380 (E.D. Pa. 1978); *Rew* v. *Beneficial Standard Life Ins. Co.*, 41 Wash.2d at 582-583. There is no ambiguity in the contract provisions on this score. See *Kolligian* v. *Prudential Ins. Co. of America*, 353 Mass. 322, 324 (1967).

Prescinding from the question whether it was properly before the motion judge, we think that the plaintiffs can draw no comfort from the 1984 certificate of insurance and the accom-panying Benefits Book. The 1984 Benefits Book contains a broader definition of "hospital"; indeed, it expressly includes a "rehabilitative hospital." The onset of Mrs. LoCicero's ill-ness, it will be recalled, occurred September 14, 1983. In-creased benefits conferred in 1984, even by the terms of the 1984 Benefits Book, do not apply to preexisting illnesses "until [the dependent] is discharged from the hospital or place of confinement; and he has engaged in the normal activities of a healthy person of the same age and sex for a period of at least 15 days in a row."

2. *Failure to pay promptly.* LoCicero's complaint contains a generalized allegation of failure to pay certain claims within a reasonable time. From correspondence attached as exhibits to Hartford's affidavit in support of summary judgment one

learns that the late payment items were nine in number. As to those items Hartford asked for itemized bills which provided information about the dates the services or materials were furnished. That information was supplied by LoCicero's lawyer under letter dated April 24, 1985. It is a substantially different list (consisting of eight creditors) from that compiled March 1, 1985, by Hartford in its request for back-up information. We may take it as expressing LoCicero's then-current demands. As to five of those eight persons who furnished services or materials, Hartford, in a reply made May 20, 1985, responded that it had not received the original claim and reported, further, that the claims were now paid. As to a sixth, Hartford reported payment previously made; as to a seventh, a $71 payment for miscellaneous supplies was reported paid; as to the eighth vendor, which was for home service, there was payment to the extent of the insurance limits for that category of assistance. LoCicero did not by counter affidavit or other document rebut Hartford's statement of payment. The only inexplicably late payment (eight months after submission) for $71 of miscellane-ous medical supplies is one entry among seventy-five presented by LoCicero for reimbursement. On their face, without regard to weight or credibility, the papers before the court on motion for summary judgment do not describe a pattern of late insurance payments.

3. *Withdrawal of counsel and consideration of supplementary papers filed by the plaintiff.* Hartford's motion for summary judgment was brought forward for argument on July 3, 1986. Settlement was in the air, and the motion judge postponed decision for twenty days to let the parties' tentative agreement jell. It failed to do so, and, indeed, LoCicero fired his lawyer (not the first one in the case) on July 18. LoCicero's lawyer (who is not counsel on appeal) moved on July 25 to withdraw. That motion was denied by a judge of the Superior Court other than the judge who heard the motion for summary judgment. On September 2, LoCicero filed a paper bearing the caption, "Plaintiff's Pro-se Directed Response to Defendant's Memorandum in Support of Motion for Summary Judgment." Upon Hartford's motion, that document was struck by a third Superior

Court judge. The same judge reheard Hartford's motion for summary judgment and allowed it. LoCicero's notice of appeal specified that he was aggrieved by the denial of his lawyer's motion to withdraw and the striking of the "response," as well as the judgment.

As a general proposition, individuals may prosecute or defend their own action. G. L. c. 221, § 48. *Opinion of the Justices*, 289 Mass. 607, 614-615 (1935). When the lawyer-client relationship deteriorates, it is both impractical and subversive of the legal profession to persist in the relationship. *Salem Realty Co.* v. *Matera*, 10 Mass. App. Ct. 571, 575 (1980), *S.C.*, 384 Mass. 803 (1981). *Phelps Steel, Inc.* v. *Von Deak*, 24 Mass. App. Ct. 592, 594 (1987). "[T]here is no requirement of law or common sense that a court compel counsel to continue to represent a former client when there [has] been a termination of the attorney and client relationship before trial by mutual consent . . . ." *McDonnell* v. *Tabah*, 297 F.2d 731, 733 (2d Cir. 1961). When litigation is actively before the court, however, the grant or denial of a lawyer's motion to withdraw in a civil case reposes in the discretion of the motion judge. *Andrews* v. *Bechtel Power Corp.* 780 F.2d 124, 135 (1st Cir. 1985), cert. denied sub nom. *Andrews* v. *Bechtel Corp.*, 476 U.S. 1172 (1986).

Neither the judge who denied the motion to withdraw nor the judge who allowed the motion to strike LoCicero's pro se "response" favored the record with a statement of reasons for his decision. We may affirm on any valid ground. See *Doeblin* v. *Tinkham Dev. Corp.*, 7 Mass. App. Ct. 720, 722 (1979). Both the motion to withdraw and the filing of the pro se "response" occurred after the motion for summary judgment had been argued. The judges were entitled to consider the untimeliness of the motion and filing, their effect upon the reasonable expectation of a party to have a case efficiently adjudicated, and the imposition on the court of adding new faces and material after argument. See Mass.R.Civ.P. 11(c), 365 Mass. 753 (1974), "[a]n attorney may, without leave of court, withdraw from a case . . . provided that . . . (2) no motions are then pending before the court . . . . " There was no abuse of discretion.

4. *Relief from judgment.* The judge who denied LoCicero's motion for relief from judgment acted well within his discretion.

LoCicero's claims under G. L c. 93A and c. 176D and those asserting personal injury to Mrs. LoCicero and loss of consortium on his part are entirely derivative from the primary claims. We need not consider them.

*Judgment affirmed.*

*Denial of motion for relief from judgment affirmed.*