Curtin, J.
Plaintiff A Spadafora Iron Works, Inc. (“Spadafora”), the subcontractor, brought this action against the general contractor, Morse Company, Inc. (“Morse”), to recover payment of the $9,450.00 subcontract price for its services, plus $11,715.00 in labor and materials for alleged extra work performed on the parties’ office building renovation project in Fall River. The trial court denied Spadafora’s Mass. R Civ. R, Rule 56 motion for summary judgment on its claim for the extra work, and allowed Morse’s cross motion on such claim.[1] Spadafora thereafter filed this Dist./Mun. Cts. R A D. A, Rule 8C appeal.
The project in question involved the joining of what had been two separate office buildings connected by a glass atrium walkthrough. The walkthrough was to be converted into a main entrance for the consolidated building, with a free standing canopy constructed overhead. Spadafora and Morse executed a written subcontract requiring Spadafora to complete structural steel work for a price of $9,450.00. The subcontract was expressly based on “Specifications Section 05120” for “Structural Steel,” and defined Spadafora’s obligations as follows:
Supply all materials, labor, plant and equipment required to perform all the work under the above specification section and as further described, but not limited, by the following:...
2. Supply and install exterior canopy consisting of tubular steel framing, anchor bolts, base and leveling plates, light gauge structural framing, steel roof deck and any accessories for a complete canopy ready for wood decking and finish roofing by others ...
By way of Rule 56 affidavit, Spadafora’s president stated that after it completed the subcontract work, Morse refused to pay Spadafora the $9,450.00 contract price unless Spadafora did work on “roof panel supports.” Spadafora contends that such “secondary framing” work on “the 18 gauge exterior structural steel” was never part of its Section 05120 responsibilities, but was instead work covered by “Specifications Section 07410” for "Manufactured Roof Panels,” to be completed by other subcontractors. Spadafora further averred that when it requested a written “change order” or authorization to cover this extra Section 07410 work, Morse replied “go ahead and do the work and we would pay for it.”
Conversely, the summary judgment affidavit of Morse’s president indicated that what Spadafora characterized as “extra work” was at all times work included within the terms of, and required by, the written subcontract. Morse averred that *115 Spadafora was responsible for structural steel work, that there was no structural steel or roof work on the project other than that involved in the construction of the canopy, and that Spadafora’s work on the project was limited to the canopy. Morse further averred that while no change order was necessary for work within the terms of the subcontract, the subcontract itself would have required written authorization for any actual “extra work.”[2] In its summary judgment motion, Morse also argued that Paragraph 21.0 of the subcontract authorized the contractor to resolve any inconsistencies or omissions in the description of the work, and rendered the contractor’s decision binding on the subcontractor.[3]
1. As the motion judge correctly ruled, the interpretation of a written contract is a question of law which is ordinarily appropriate for disposition upon summary judgment. Liberty Mut. Ins. Co. v. Zoltek Corp., 419 Mass. 704, 707 (1995); Locicero v. Hartford Ins. Group, 25 Mass. App. Ct. 339, 341 (1988). This general rule is inapplicable, however, where a written contract is not “self-interpreting,” where the nature and scope of the parties’ contractual obligations are not patently clear, and where, in the context of the controversy at issue, the parties’ intent cannot be gleaned from the contract language used. In such a case, parol or extrinsic evidence is not only admissible, but also necessary to explain and elucidate contract provisions and to apply them correctly in resolving the parties’ competing claims. Antonellis v. Northgate Constr. Corp., 362 Mass. 847, 851 (1973); Robert Indus., Inc. v. Spence, 362 Mass. 751, 753-754 (1973); Charles River Mort. Co. v. The Baptist Home of Mass. Inc., 36 Mass. App. Ct. 277, 281 (1994). Such an action is “not ripe for adjudication upon a motion for summary judgment; ‘further exploration of the facts is necessary.’” New England Finan. Resources, Inc. v. Coulouras, 30 Mass. App. Ct. 140, 147 (1991). See also Bernard v. United Brands Co., 27 Mass. App. Ct. 415, 416 (1989); Gianely v. The Travelers Ins. Co., 1995 Mass. App. Div. 155, 156.
2. The present contract actions falls within such category. The sole issue presented is whether the “roof panel support” work undertaken by Spadafora was required by, or could be reasonably construed as within the terms of, Spadafora’s structural steel subcontract, as Morse contends, or instead consisted of work, labor and materials separate from and in addition to the subcontract, as Spadafora claims.[4] While the dispositive issue is easily framed, a meticulous reading of the subcontract fails to yield a definitive answer.
Viewing the Rule 56 materials in the light most favorable to Spadafora, Willitts v. Roman Catholic Archbishop of Boston, 411 Mass. 202, 203 (1991); Liberty Mut. Ins. *116 Co. v. National Consol. Warehouses, Inc., 34 Mass. App. Ct. 293, 296 (1993), there is at least a plausible basis for its claim for extra work. Specifications 05120 upon which the subcontract was expressly based makes no reference to roof panels, roof panel supports or to Specifications 07410 covering manufactured roof panels. Similarly, there is nothing in Specifications 07410 which renders roof panel work an integral component of structural steel work.
Beyond the absence of unambiguous cross references, little more can be ascertained with certainty. The reason is that neither party has defined a manufactured roof panel, explained precisely and clearly what Spadafora’s roof panel support work entailed, or delineated any section of the extensive subcontract specifications which would identify the roof panel work as either part of the “complete canopy” Spadafora was required to construct, or as an aspect of the “finish roofing” which the subcontract designates as the work of others. One of those two possible connections might well be readily drawn by an architect, engineer or experienced contractor, trained to decipher the highly technical jargon and concepts of subcontract specifications and armed with the explanatory drawings and diagrams which are constantly referenced in the specifications and which were not provided in any form to the court The parties’ meager, con-clusory affidavits, however, provided nothing which would enable a court on summary judgment to wade competently through subcontract purlins, camber, shims, girts, fascias, battens and mullions to arrive at a correct resolution of the parties’ controversy.
3. Morse’s summary judgment motion and supporting affidavit failed to satisfy its burden, as the moving party, of demonstrating that there was an absence of evidence to support Spadafora’s claim for extra work, or that proof of an element of such claim was “unlikely to be forthcoming at trial.” Flesner v. Technical Communication Corp., 410 Mass. 805, 809 (1991). See also Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
Morse’s conclusory averments that Spadafora was responsible for structural steel work on the canopy merely begged the dispositive question of whether the roof panel support work was structural steel or extra work outside of the subcontract Further, Morse’s affidavit is devoid of any denial of the parties’ purported oral agreement, set forth in Spadafora’s affidavit, for Spadafora to work on the roof panels as extra work in return for Morse’s promise to pay for the same. There is nothing in Paragraph 14.1 of the subcontract relied upon by Morse which would preclude, as a matter of law, such an oral agreement It is established that parties to a written contract may waive or modify such contract by a subsequent oral agreement, even when the contract requires any modification to be in writing. J. P. Smith Co. v. Wexler Construc. Co., 353 Mass. 551, 555 (1968); Schinkel v. Maxi-Holding, Inc., 30 Mass. App. Ct 41, 47 (1991); Abdow v. Ence, 1986 Mass. App. Div. 93, 96. But cf. Chiappisi v. Granger Contracting Co., 352 Mass. 174, 178 (1967). The existence and terms of an oral agreement ordinarily present questions of fact for a trial court not amenable to resolution upon summary judgment First Penn. Mortg. Tr. v. Dorchester Sav. Bank, 395 Mass. 614, 622-624 (1985); Greenfield v. Pearlstein, 1995 Mass. App. Div. 30, 31 and cases cited. Finally, there is nothing in Paragraph 21.0 which would preclude Spadafora’s claim for extra work. There is no contention that there was an inconsistency in, or an omission from, the specifications which would have rendered any issue of the roof panel support work subject to the requirements of Paragraph 21.0, and the provision is, at least on the basis of the parties’ summary judgment materials, inapplicable as a defense to Spadafora’s claim.
Accordingly, the trial court’s allowance of defendant Morse Company’s motion for summary judgment on the plaintiff’s claim for extra work is reversed, and this action is returned to the Malden Division for a trial on this claim.
So ordered.

The case then proceeded to trial on Spadafora’s remaining claim for recovery of the $9,450.00 subcontract price. After trial, judgment was entered for Spadafora in the full amount sought. That judgment has not been appealed.

 Paragraph 14.1 of the subcontract provided: “No extra work or claim for extra work, or changes, or extensions of time will be recognized or paid for unless agreed upon in writing by both the Contractor and the Subcontractor prior to the commencement of the performance of the extra work to be done and/or changes to be made, or the extension granted, as the case may be.”

 Paragraph 21.0 states: “No claim for extra work or charges for same will be recognized for work that shall be reasonably construed as part of the Work. In the event that any matters contained in the Specifications have been omitted from the Plans or vice versa, the same shall be construed as if contained in both. Any matters contained in any portion of the Conditions to the General Contract to which this Subcontract pertains shall be construed as being part of the specifications for the work and shall be part of the Work covered by this Subcontract. The Subcontractor shall promptly inform the Contractor in writing of any inconsistency between the specifications and plans, or between the general specifications and the specific specifications. The decision of the Contractor resolving any such inconsistency shall be binding upon the Subcontractor and shall be deemed to be included in the work covered by this Subcontract.”

 Morse does not dispute that Spadafora actually performed the roof panel work in question.