## COMMERCE INSURANCE CO., INC. *vs.* VITTORIO GENTILE & others.[1]

No. 12-P-1169.

Norfolk. September 11, 2013. - March 13, 2014.

Present: KANTROWITZ, SIKORA, & HINES, JJ.

Further appellate review granted, 469 Mass. 1101 (2014).

*Insurance,* Motor vehicle insurance, Coverage, Misrepresentation. *Motor Vehicle,* Insurance, Permission to operate. *Contract,* Insurance. *Practice, Civil,* Summary judgment.

In a civil action brought by an insurer seeking a judgment declaring its obligation to pay substantial damages under the bodily injury provision of a standard Massachusetts motor vehicle policy (policy) it issued to the defendants, the judge properly granted summary judgment in favor of the insurer, where the defendants' violation of an operator exclusion form that had been made part of the policy relieved the insurer of any duty of indemnification of the defendants under a clause in the policy for optional bodily injury coverage, in that the defendants' failure to keep their promise to exclude their grandson as an operator in all circumstances ripened into a misrepresentation affecting the degree of risk and the level of the premium, and the breach of a material term of the policy, as a matter of elemental contract law, excused the insurer from performance of its duty of coverage [71-74]; in that an annual renewal declarations page, listing the grandson's continuing exclusion, was an expression by the insurer beyond a renewal inquiry and was one in the form of an assertion, the materiality of which the defendants were aware by virtue of the exclusion's status as a special or express agreement [74-75]; and in that a claim that G. L. c. 175, § 113A(5), prevented the insurer from disclaiming coverage was waived [75-76].

CIVIL ACTION commenced in the Superior Court Department on November 7, 2007.

A motion for summary judgment was heard by *E. Susan Garsh,* J., and the entry of final judgment was ordered by *Patrick F. Brady,* J.

*Brian P. Burke* for Janice Silverio & another.

---

[1] Lydia Gentile; Vittorio Gentile, Jr.; Janice Silverio, as guardian of Douglas Homsi; and Joseph Homsi.

*Richard R. Eurich (John F. Hurley, Jr.,* with him) for the plaintiff.

SIKORA, J. Commerce Insurance Company (Commerce) brought this action in Superior Court for a declaratory judgment of its obligation to pay substantial damages under the optional bodily injury provision of a standard Massachusetts motor vehicle policy. Defendants Vittorio and Lydia Gentile are the policyholders. The defendant Vittorio Gentile, Jr. (Junior), is their grandson. Defendants Joseph Homsi and Janice Silverio, as guardian of Douglas Homsi, by separate suit have achieved verdicts and resulting judgments of substantial compensatory damages for severe personal injuries against Vittorio, Lydia, and Junior, by reason of Junior's negligent operation of his grandparents' vehicle and by reason, inter alia, of the negligent failure of Lydia and Vittorio to prevent Junior's use of that vehicle.[2]

At the time of the accident on December 10, 2006, an operator exclusion form, drafted by Commerce and signed by Lydia and Junior on December 7, 2004, provided that Junior would not drive any vehicle covered by the Gentiles' policy. Junior did operate his grandparents' vehicle and, according to the verdicts in the separate personal injury litigation, negligently caused devastating injuries to the Homsi brothers.

In this litigation Commerce sought a judgment declaring that the Gentiles' violation of the operator exclusion form relieved the insurer of any duty of indemnification of them under the policy clause for optional bodily injury coverage of $500,000. A judge of the Superior Court concluded that Junior had violated the operator exclusion form as a material representation underlying the issuance of the policy and that Commerce therefore was relieved of its duty of optional coverage for bodily injury caused by their vehicle. The Homsi parties have appealed. For the following reasons, we now affirm the judgment.

*Background.* The record presents the following undisputed facts.[3] Vittorio and Lydia owned and registered several vehicles

---

[2]After the entry of the partial summary judgment presently on appeal, a Superior Court jury awarded Douglas Homsi damages of $9,500,000 and Joseph Homsi damages of $2,500,000 upon findings of liability jointly and severally against Junior, Lydia, and Vittorio.

[3]These came in large part from the parties' statements of undisputed facts

from their address in Westwood. They insured the vehicles under standard Massachusetts automobile insurance policy forms approved by the Division of Insurance. On December 7, 2004, Lydia and Junior executed an operator exclusion form, also approved by the Division of Insurance as an adjunct term of a standard policy. The final sentence of the form recited, "It is agreed that the person named below will not operate the vehicle(s) described below, or any replacement thereof, under any circumstances whatsoever." Lydia signed the form as the policyholder; Junior signed it as the "excluded operator." The proscribed vehicles included a 1999 Lexus.

The exclusion form provided additionally:

> "I am aware that under the terms of my Massachusetts [a]utomobile [i]nsurance [p]olicy, if I or someone on my behalf provides false, deceptive, misleading or incomplete information in any application or policy change request, and if such false, deceptive, misleading or incomplete information increases the company's risk of loss, the company may refuse to pay claims *under any or all of the [o]ptional [i]nsurance [p]arts of this policy*" (emphasis supplied).

Lydia executed the operator exclusion form because her insurance agent had advised her that the premiums would increase significantly if Junior, by reason of his poor driving history, were to remain within coverage. Commerce's underwriting department later conducted a review of Junior's record and concluded that, if he had stayed on the policy, the premium would have increased by $929 for the one-year policy period beginning in April of 2006.

The policy renewed each year on April 22. A declaration page issued for the renewed year; for the period of April 22, 2006, to April 22, 2007, it identified Junior under the heading "Operator Status" as "E" for excluded. The terms of the policy provided compulsory bodily injury coverage of $20,000 per

and legal elements submitted for summary judgment purposes in accordance with Superior Court Rule 9A(b)(5).

person and $40,000 per accident; and optional bodily injury coverage of $500,000 per person and per accident.

The policy included the following general provision:

> "If you or someone on your behalf gives us false, deceptive, misleading or incomplete information in any application or policy change request and if such false, deceptive, misleading or incomplete information increases our risk of loss, *we may refuse to pay claims under any or all of the [o]ptional [i]nsurance [p]arts of this policy.* Such information includes the description and the place of garaging of the vehicles to be insured, the names of all household members and customary operators required to be listed and the answers given for all listed operators." (Emphasis supplied).

The parties do not dispute that, after the execution of the operator exclusion form on December 7, 2004, the policy renewed twice, from April 22, 2005, to April 22, 2006; and from April 22, 2006, to April 22, 2007. The accident occurred as Junior drove the Lexus on the night of December 10, 2006.

While the Homsis' personal injury action was pending, the judge in this action allowed Commerce's partial summary judgment motion to void the optional bodily injury coverage of the 1999 Lexus. She reasoned, "[W]hen [Junior] retrieved the keys for the 1999 Lexus, opened the driver's door, and turned the key in the ignition, he was providing false, deceptive, or misleading information to Commerce because the representation he made on the [o]perator [e]xclusion [f]orm . . . was a continuing representation that he would not, under any circumstances, operate that vehicle. See *Hanover Ins. Co.* v. *Leeds,* 42 Mass. App. Ct. 54, 57 (1997) ('Statements made in an application for insurance are in the nature of continuing representations and speak from the time the application is accepted or the policy is issued') (*Leeds*)." She concluded that the violation of the continuing representation by Junior entitled Commerce to refuse coverage under the optional insurance parts of the policy.

At the conclusion of the trial of the separate personal injury action resulting in large verdicts for the Homsis, the trial judge entered final judgment in Commerce's declaratory suit limiting

recovery against the insurer to compulsory coverage.[4] The Homsis received coverage and payment under the provision for underinsurance contained in their own automobile policy with the Arbella Company.[5]

*Analysis.* 1. *Standard of review.* We examine the record and ask whether the evidence, in the light most favorable to the nonmoving party, establishes all material facts and entitles the moving party to a judgment as a matter of law. *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991). *Roman* v. *Trustees of Tufts College*, 461 Mass. 707, 710-711 (2012). From the same materials presented to the motion judge, we proceed de novo. *Miller* v. *Cotter*, 448 Mass. 671, 676 (2007). *Eastern Holding Corp.* v. *Congress Financial Corp.*, 74 Mass. App. Ct. 737, 740 (2009). We may affirm on any ground visible in the record even if the parties did not present it and the motion judge did not adopt it. *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, *supra.* *Aetna Cas. & Sur. Co.* v. *Continental Cas. Co.*, 413 Mass. 730, 734-735 (1992). *Rasheed* v. *Commissioner of Correction*, 446 Mass. 463, 478 (2006). *Hanover Ins. Co.* v. *Leeds*, *supra* at 54. And we bear in mind that summary judgment disposition is often appropriate for solution of disputes turning on the application of contractual documents. See *Lumber Mut. Ins. Co.* v. *Zoltek Corp.*, 419 Mass. 704, 707 (1995); *LoCicero* v. *Hartford Ins. Group*, 25 Mass. App. Ct. 339, 341 (1988).

2. *Continuing representation; continuing promise.*[6] a. *Representation.* The Homsi parties contend that no breach of representation, or misrepresentation, arose so as to invalidate cover-

---

[4]By answers to special verdict questions, the jury found (1) liability of Junior by reason of negligent operation; (2) liability of Vittorio and Lydia by reason of negligent entrustment; (3) liability of Vittorio and Lydia as agency principals of Junior, G. L. c. 231, § 85A; and (4) liability of Vittorio and Lydia for negligent failure to secure the automobile from Junior's "incompetence or unfitness." The verdicts rendered all three Gentiles jointly and severally liable for the accompanying damages.

[5]Arbella has not participated in the present litigation.

[6]As a preliminary argument, the Homsi parties contend that the operator exclusion form suffers from invalidating incompleteness by reason of the omission of Vittorio's signature as a policyholder. This assertion is appearing for the first time on appeal. We may regard it as waived. See, e.g., *Gorey* v. *Guarente*, 303 Mass. 569, 570-571 (1939); *Carey* v. *New England Organ*

age under the concept of continuing representation applied by *Leeds*, *supra*. In that case the court held that the failure of the operator to report on a policy renewal application the principal garage relocation of her automobile from her family residence in one part of the Commonwealth to her college residence in another. It carried material importance because the new location brought an increased risk of loss to the insurer and required a higher premium from the insured. *Id.* at 59-60.[7] Even in the absence of intent to deceive, the materiality of the inaccuracy relieved the carrier of the duty of coverage.[8]

The Homsi parties propose that the "continuing representation" language of *Leeds* applies only during the pendency of an insurance application. They cite the language of *Chicago Ins. Co.* v. *Lappin*, 58 Mass. App. Ct. 769, 780 (2003). "Thus, an applicant has a duty to inform the insurer of any known changes rendering his or her initial representations untrue until such time as the policy becomes 'operative.' " *Ibid.* In full context and practical sense, we read that passage to mean that an insured, *at a minimum*, has a duty to inform the company of a material change during the application period. It does not relieve the policyholder of a duty to do the same during the coverage period.

---

*Bank*, 446 Mass. 270, 285 (2006); *The General Convention of the New Jerusalem in the United States of America, Inc.* v. *MacKenzie*, 66 Mass. App. Ct. 836, 842 (2006).

If we were to consider the contention, the alleged defect would not undermine the validity of the exclusion agreement. Although the declaration page listed only Vittorio as a policyholder, the Registry of Motor Vehicles recorded Lydia as a co-owner of the 1999 Lexus with Vittorio. She signed as a "policyholder." An agency relationship will arise between spouses if one spouse was acting on a partner's behalf for his benefit and with his knowledge and consent; or if the other spouse learns of, and ratifies, the other's conduct. *Gordon* v. *O'Brien*, 320 Mass. 739, 741 (1947). *Sztramski* v. *Spinale*, 332 Mass. 500, 503 (1955). *Fennell* v. *Wyzik*, 12 Mass. App. Ct. 909, 910 (1981). This relationship of implied mutual agency arises if the spouses participate in a business matter together and have knowledge of one another's conduct even though one spouse may perform a relatively passive role. *Tzitzon Realty Co.* v. *Mustonen*, 352 Mass. 648, 654 (1967). *Dhanda* v. *Tri M, Ltd.*, 24 Mass. App. Ct. 700, 706-707 (1987). Those circumstances exist here.

[7]The insurer in *Leeds* furnished unrebutted affidavits from a member of its underwriting department that the college area relocation presented, on an actuarial basis, higher risk of loss and would have warranted an annual premium increase of $119. *Id.* at 59-60.

[8]The automobile in *Leeds* was involved in an accident causing personal injuries to a third party. *Id.* at 55.

The exclusion of Junior was a continuous material term of the policy. If knowledge of a fact would naturally influence the judgment of the underwriter in the formation of the contract at all, or in the estimation of the character or degree of risk, or in the calculation of the premium, the fact is material. See *Daniels* v. *Hudson River Fire Ins. Co.*, 66 Mass. 416, 425 (1853) (seminal decision of Shaw, C.J.); *Barnstable County Ins. Co.* v. *Gale*, 425 Mass. 126, 128 (1997), and cases cited. Modern legislation embodies and confirms this long-standing common-law definition of misrepresentation by an applicant for coverage.[9]

The Gentiles received substantially reduced premiums as a result of the exclusion of Junior from the policy. While no intent to deceive may have existed at the formation of the exclusion, the Gentiles were unable to keep their promise to exclude Junior "in all circumstances whatsoever." That failure ripened into a misrepresentation affecting the degree of risk and the level of the premium.

b. *Promise.* A realistic characterization of the operator exclusion representation as a bargained for promise provides a more direct solution. In exchange for a reduced premium, Vittorio and Lydia promised to exclude Junior from operation of the 1999 Lexus. To complete the quid pro quo, Commerce received a reduced risk of loss. Junior, by intention, and Vittorio and Lydia, by adjudicated negligence, breached the promise of exclusion, "an essential and inducing feature of the contract[]." *DiPietro* v. *Sipex Corp.* 69 Mass. App. Ct. 29, 38 (2007), quoting from *Bucholz* v. *Green Bros.* 272 Mass. 49, 52 (1930). Very simply, that breach of a material term of the policy, as a matter of elemental contract law, excused Commerce from performance of its duty of coverage. See, e.g., *National Overall Dry Cleaning Co.* v. *Yavner*, 321 Mass. 434, 440 (1947); *New England*

---

[9]General Laws c. 175, § 186(*a*), as amended by St. 2008, c. 376, § 1, provides:

> "No oral or written misrepresentation or warranty made in the negotiation of a policy of insurance by the insured or in his behalf shall be deemed material or defeat or avoid the policy or prevent its attaching unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter misrepresented or made [as] warranty increased the risk of loss."

*Canteen Serv., Inc.* v. *Ashley*, 372 Mass. 671, 676 (1977); *Clamp-All Corp.* v. *Foresta*, 53 Mass. App. Ct. 795, 810 (2002).

3. *Annual renewal.* The Homsi parties accurately point out that, in contrast with the insured in *Leeds*, the Gentiles did not execute annual renewal applications containing a material omission. The accident here occurred during the second annual renewal period after execution of the exclusion form. Upon that distinction, they assert the authority of *Quincy Mutual Fire Ins. Co.* v. *Quisset Properties, Inc.*, 69 Mass. App. Ct. 147, 152-156 (2007) (*Quisset Properties*). In that instance the insured failed to notify his insurer through a period of four renewal years of the dissolution of his business entity as the owner and registrant of the covered vehicle. The commercial character of the coverage provided a substantially lower annual premium. The insured's son (a listed operator on the commercial policy) drove the automobile into a collision causing catastrophic injury to a third party. As appears here, the insurer at annual renewals had not sent the insured an application or questionnaire requesting updated information or changes relevant to coverage. *Id.* at 150.

This court, in *Quisset Properties*, reversed the entry of summary judgment absolving the insurer of coverage. We reasoned (1) that at renewal an insurer carried a burden of an initiating inquiry about material changes; (2) that in the absence of such an inquiry an insured's silence about changed circumstances of a material nature did not constitute a misrepresentation relieving the insurer of coverage because (a) ministerial renewals are not "negotiations" of coverage comprehending a duty of disclosure by the insured, and (b) an insured does not have knowledge, comparable to the insurer's, of the material nature of a changed circumstance, unless (c) the insurer and insured have a "special agreement" or "express agreement" otherwise. *Id.* at 153-156.

For several reasons the present case does not fall within the holding of *Quisset Properties*. First, the annual renewal declarations page placed an "E" beside Junior's name so as to inform the Gentiles of his continuing exclusion, an expression beyond a renewal inquiry and one in the form of an assertion. Second, the Gentiles had comparable knowledge of the materiality of the exclusion of Junior by reason of its importance, the declarations page symbol, and the ongoing lower premium. Third, the

exclusion constituted an exceptional "special agreement" or "express agreement" of the nature contemplated by the *Quisset Properties* reasoning. Such an exclusionary provision continues through renewal in the absence of inquiry by the company. In short, our case falls within the orbit of the *Leeds* decision, and not the *Quisset Properties* decision.[10]

4. *Operation of G. L. c. 175, § 113A(5)*. Finally, the Homsi parties contend that G. L. c. 175, § 113A(5), as amended by St. 1998, c. 155, § 1, prevents Commerce from disclaimer of coverage. In substance, that section provides that no misstatement in an application nor any violation of a policy term by an insured will bar recovery under a policy to an innocent judgment creditor (such as an injured third party in the position of the Homsis).[11] This contention does not appear in the Superior Court papers. It is waived. If it were properly open on appeal, it would not succeed because § 113A(5) applies only to compulsory, and not optional, coverages. See G. L. c. 175, § 113A, first par. (assimilating the definition of "motor vehicle policy" of G. L. c. 90, § 34A, as amended by St. 1998, c. 273, §§ 12 and 14, a designation specifically to the $20,000 per person and $40,000 per accident limits of compulsory coverage).[12] That

---

[10]Our case suggests the utility of some brief additional language in the operator exclusion form approved by the Division of Insurance and in the renewal declarations page employed by the insurer. The form might add a sentence to the effect that the exclusion continues in force through subsequent renewals of the policy unless the parties expressly withdraw or alter it in writing. A renewal declarations page might use the full word "Excluded" in place of the initial "E."

[11]In pertinent part, § 113A(5) provides that "no statement made by the insured or on his behalf . . . in securing the policy . . . no violation of the terms of the policy and no act or default of the insured . . . shall operate to defeat or avoid the policy so as to bar recovery . . . by a judgment creditor. . . ."

[12]Section 34A provides the following definition:

> " 'Motor vehicle liability policy,' a policy of liability insurance which provides indemnity for or protection to the insured and any person responsible for the operation of the insured's motor vehicle with his express or implied consent against loss by reason of the liability to pay damages to others for bodily injuries . . . to the amount or limit of at least twenty thousand dollars on account of injury to or death of any one person, of at least forty thousand dollars on account of any one accident resulting in injury to or death of more than one person . . . ."

As noted above, both the Commerce policy and the operator exclusion form

text reflects a purposeful legislative balance between financial protection for the injured judgment holder and financial exposure of the responsible driver's insurer reasonably calibrated to its acceptance of risk and level of premiums.

*Judgment affirmed.*

conform to this statutory distinction. They advise the insured that a material misrepresentation will entitle the company to refuse payment of claims falling under the *optional* coverages of the policy.