RAJ K. DHANDA & another[1] *vs.* TRI M, LTD., & another.[2]

Suffolk.  May 15, 1987. — September 16, 1987.

Present: BROWN, KASS, & SMITH, JJ.

*Negligence,* Comparative, One owning or controlling real estate, Economic
   loss. *Practice, Civil,* Instructions to jury, Objection, Request for instruc-
   tions, Appeal. *Agency,* What constitutes, Scope of authority or employ-
   ment. *Husband and Wife,* Spouse as agent.

On appeal from a judgment against lessors of certain property on their
   claims for unpaid rents and restoration costs and on the lessee's coun-
   terclaim for damages based on misrepresentation, this court declined to
   consider the lessors' claim that, having instructed the jurors that the
   lessee might recover if the lessors had negligently misrepresented the
   zoning status of a portion of their property, the judge should have
   instructed further on comparative negligence, where neither side had
   briefed or argued the question of the appropriateness of a comparative
   negligence charge in connection with a negligent misrepresentation
   claim. [703-706]
At the trial of claims by lessors, husband and wife, for unpaid rents and
   restoration costs and their lessee's counterclaim for damages based on
   the lessors' alleged misrepresentation of the leased premises as commer-
   cially zoned, the judge did nor err in denying the wife's motion for a
   directed verdict as to herself where, despite the wife's comparatively
   passive role in the transaction, there was evidence upon which the jury
   could find that the husband had authority to speak on behalf of himself
   and his co-owner, his wife, as to the characteristics of the premises and
   the making of the lease. [706-707]
This court ordered dismissal of an appeal from judgment against a lessee
   on its counterclaim against its lessors alleging violation of G.L. c. 93A
   by reason of the lessors' alleged misrepresentation of the leased premises
   as commercially zoned, where the lessee's notice of appeal was not
   timely filed under Mass.R.A.P. 4(a), and where the lessee made no
   effort to extend the time for filing its notice of appeal under Mass.
   R.A.P. 4(c). [707]

[1] Neena Dhanda.

[2] Leonard P. Kupsc.

CIVIL ACTION commenced in the Superior Court Department on June 24, 1982.

The case was tried before *J. Harold Flannery, J.*

*Mitchell J. Sikora* for the plaintiffs.

*John J. Bonistalli (Patricia A. Wilson* with him) for the defendants.

KASS, J. Commercial disaster is often the product of a conjunction of errors and mischance which in isolation would not have precipitated calamity. This case is illustrative. The facts we outline are those which the jury could have found, construing the conflicting evidence most favorably to Tri M, Ltd. (Tri M), as plaintiff in counterclaim. Tri M was the prevailing party below.

Raj K. Dhanda (Dhanda) negotiated a lease on behalf of himself and his wife, Neena Dhanda, as landlords, with Tri M, as tenant, of 4,300 square feet of office space in the rear of the first floor of 380 Washington Street in Brighton. Although the space had previously been used as part of a furniture store and, before that, (sequentially) for a catering business and casket manufacturing, it was located in a residence (R-.5) zone. The front of 380 Washington Street, however, and the first hundred feet of its depth, were in a business (B - 1) zone, i.e., the zoning district line cut through the Dhanda building so as to place fifty-three percent of it in the B-1 district and the balance in the R-.5 district.

Dhanda had been made aware of the zoning status of the rear of 380 Washington Street by its previous owner, Donald Neitlich, who sold the building to the Dhandas in 1981. Dhanda did not discuss the zoning status of the premises with Leonard P. Kupsc, Tri M's president, who conducted lease negotiations on Tri M's behalf. Kupsc represented that Tri M was going to use the space for a primary medical care clinic. Zoning which permitted Tri M's proposed use was a condition of Tri M's licensure and financing. Kupsc, therefore, undertook to have the zoning checked by Tri M's lawyer. The latter (not the same lawyer as appellate counsel) made a verbal inquiry in September, 1981, with the inspectional services department of Boston and reported back that the premises were in a B-1

district, in which Tri M's proposed use was allowed. That comforting information was quite wrong. At the lawyer's request, this information was confirmed in a letter, dated January 29, 1982, from the city's zoning administrator, who wrote that "[t]he building located at 380 Washington Street . . . is within a B-1 general business zone. The use which you described (clinic not accessory to a main use) falls within Use Item #39 of the Boston Zoning Code. Such use is an allowed use." The misinformation upon which Tri M had proceeded was, thus, perpetuated and reinforced.

On April 5, 1982, Tri M's contractor, who was to make leasehold improvements, filed an application for a building permit to change occupancy and make alterations. That document was not a triumph of precision. Apart from describing the owner of the building as "Ray Dhandi," it grievously misstated the dimensions of the building as eighty feet along Washington Street and fifty feet deep. A fifty-foot depth did not come close to penetrating the residence zone.[3] The actual dimensions of the building were forty-eight feet wide along Washington Street, fifty-seven feet wide in the rear, and 189 feet deep. The dimensions supplied by Tri M's builder (the application was signed by Dhanda, as owner, in accordance with Tri M's request) masked the incipient zoning violation and allowed the city later to claim it had been misled into issuing a building permit by the erroneous dimensions on the permit application. The zoning discordance was flushed out when neighbors learned that the primary care medical clinic, then under construction, was exclusively for substance abuse patients.

Hard upon eruption of the predictable neighborhood hullabaloo, the inspectional services department revoked the permit for Tri M's alterations and occupancy, and Tri M stopped paying rent. The Dhandas initiated the instant case with an action for damages based on the cost of restoring the premises, claiming rent and possession, and seeking to reach and apply

---

[3] Under the Boston Zoning Code, a business use could extend thirty feet into the residential district.

certain assets. Tri M counterclaimed for damages based on misrepresentation and, infallibly, on c. 93A violations. A jury returned a verdict of $49,177.20 for Tri M on the common law counts. As for the c. 93A count, the trial judge found that: The Dhandas had not expressly misled Tri M; and Tri M had not relied on Dhanda's expression of expectation that a nonresidential use would be permissible, but had independently obtained equally mistaken assurances about how the leased premises could be used. Both sides have appealed.

1. *Comparative negligence charge.* On appeal the Dhandas protest that the judge in charging the jury failed to instruct on comparative negligence, i.e., having instructed the jurors that Tri M might recover if the Dhandas had negligently misrepresented the zoning status of the rear space, the judge should have gone on to instruct that, if the negligence of Tri M and its agents was greater than that of the Dhandas, Tri M was not to recover. See G. L. c. 231, § 85. See also comments of J.W. Smith which follow G. L. c. 231, § 85 (West 1985). Cf. *Lane* v. *Meserve,* 20 Mass. App. Ct. 659, 662-665 (1985); *Morgan* v. *Lalumiere,* 22 Mass. App. Ct. 262, 265-266 (1986).

Although both parties have assumed in their briefs that a comparative negligence charge is in order in a case of negligent misrepresentation, that proposition is far from clear. Our comparative negligence statute applies the concept to an "action . . . to recover damages for negligence resulting in death or in injury to person or property." G. L. c. 231, § 85, as appearing in St. 1973, c. 1123, § 1. That language suggests physical harm, rather than economic loss from negligent misrepresentation. Similar language appears in § 1 of the Uniform Comparative Fault Act, 12 U.L.A. (Master ed. Supp. 1987),[4] as to which the commissioners said, in an explanatory comment, that application of the Uniform Act "does not include matters like economic loss resulting from a tort such as negligent misrepresentation." See Restatement (Second) of Torts § 552A

---

[4] The Uniform Comparative Fault Act has been adopted only in Iowa and Washington.

comment b (1976), which considers it "debatable whether [a trend toward comparative negligence] should affect liability for pecuniary harm as well."[5] Rather, the Restatement states the classic position that contributory negligence of a plaintiff in relying upon a misrepresentation will bar recovery. Restatement (Second) of Torts § 552A and comment a (1976). See also, to the same effect, 2 Harper, James & Gray, Law of Torts § 7.6 at 414 (2d ed. 1986); Prosser & Keeton, Torts § 108 at 750 (5th ed. 1984).

As neither side has briefed or argued the question of the appropriateness of a comparative negligence charge in connection with a negligent misrepresentation claim, we are disinclined to reach the question. We need not do so because a review of the record persuades us that the idea of instructing the jury on comparative negligence was not raised at trial and developed for the first time on appeal. See *Royal Indem. Co. v. Blakely,* 372 Mass. 86, 88 (1977). Compare *Cruz v. Commissioner of Pub. Welfare,* 395 Mass. 107, 111 (1985). Before the judge delivered his charge, the Dhandas' counsel filed twenty pages (some not full pages) of requests for instructions and eight pages of supplementary requests for instructions. None of the written requests for instructions asked that the judge charge on comparative negligence.[6] There was no suggestion that the judge require the jury to return a special verdict

---

[5] The authorities are by no means uniform. In a case also based on negligent misrepresentation of zoning status, the court thought comparative negligence had no place "in the context of ordinary business transactions." *Carroll v. Gava,* 98 Cal. App. 2d 892, 897 (1979). Contrast *Robinson v. Poudre Valley Fed. Credit Union,* 654 P.2d 861, 863 (Colo. Ct. App. 1982); *Florenzano v. Olson,* 387 N.W.2d 168, 175-176 (Minn. 1986); *Lippes v. Atlantic Bank of N.Y.,* 69 A.D.2d 127, 135-141 (N.Y. App. Div. 1979). The last three cases cited apply comparative negligence in contexts other than physical injury. Cf. 2 Harper, James & Gray, Law of Torts § 7.6 at 414-415 (2d ed. 1986); Prosser & Keeton, Torts § 107 at 745 (5th ed. 1984). Cf. also, *McElroy v. Boise Cascade Corp.,* 632 S.W.2d 127, 136 (Tenn. 1982), in which contributory negligence is accepted as a bar to negligent misrepresentation.

[6] Indeed, the Dhandas did not, in so many words, request a contributory negligence charge.

on the respective percentages of negligence of the parties. See Mass.R.Civ.P. 49(a), 365 Mass. 812-813 (1974).[7]

Nonetheless, the judge, in his charge, spoke several times about allocation of damages, mostly by way of suggesting that the jury could decide that rent paid by Tri M might have been the product of misrepresentation, while Tri M's expenses for architecture and renovations might have been the product of the faulty information about zoning obtained by Tri M's own, independent efforts. This was no more than a standard causation instruction. He also, at the end, spoke more generally, e.g., "So, if it appears to you, with respect to the allocation of responsibility for certain losses between the parties, you need not achieve perfect symmetry with respect to fault or who should bear which costs. If in your discretion, and wisdom and judgment, there are some aspects of mutual fault, you may take that into account in your award of damages." Those instructions were proper, at least in the general sense, as they spoke about allocation in terms of reliance and causation, in a manner related to traditional notions of recovery for misrepresentation.

Trial counsel for the Dhandas[8] objected thus: "I also object to your instruction that the jury may allocate responsibility as between the parties. Your Honor gave no charge on comparative negligence or anything of that nature which would give rise to the jury's power to allocate; and under those circumstances I object to that."

In view of the absence of a comparative negligence charge from the considerable jury charge agenda which the parties had put forth, those remarks were unlikely to be heard as a request to the judge to give a more specific charge on comparative negligence of the sort that the Dhandas now argue was

---

[7] General laws c. 231, § 85, as appearing in St. 1973, c. 1123, § 1, provides, in pertinent part: "[A]ny damages allowed shall be diminished in proportion to the amount of negligence attributable to the person for whose injury, damage or death recovery is made."

[8] Different counsel argued the appeal.

erroneously left out, namely, that if Tri M were more than fifty percent negligent, it could not recover. Rather, the import of counsel's objection seemed to be that he wished the judge to purge his instructions of his remarks about allocating fault and damages; it directed attention away, especially in context, from further discussion of comparative neglience. As such, it cannot be characterized as a permissibly vague direction of the court's attention to material omitted from the charge and desired in it. See *Collins* v. *Baron,* 392 Mass. 565, 568-569 (1984). Rather, counsel's comment did not "stat[e] distinctly the matter to which he objects and the grounds of his objection." Mass.R.Civ.P. 51(b), 365 Mass. 816 (1974). As in *Narkin* v. *Springfield,* 5 Mass. App. Ct. 489, 491 (1977), the objection could not "reasonably be thought to have had the practical effect of directing the judge's attention" to what was missing or what was wanted. See also *Huff* v. *Holyoke,* 386 Mass. 582, 583 n.2 (1982); *MacCuish* v. *Volkswagenwerk A. G.,* 22 Mass. App. Ct. 380, 396-397 (1986), *S.C.,* 400 Mass. 1003 (1987).

2. *Neena Dhanda's liability.* Mrs. Dhanda was not involved in any communications with Tri M about the proposed lease, save for relaying telephone messages to her husband. She did not sign the lease or the erroneous building permit application. For those reasons, Mrs. Dhanda moved for a directed verdict as to herself. The motion was rightly denied. A spouse may act as the agent of the other spouse. *Tzitzon Realty Co.* v. *Mustonen,* 352 Mass. 648, 654 (1967). *Fennell* v. *Wyzik,* 12 Mass. App. Ct. 909, 910 (1981). There was evidence upon which the jury could find that Raj Dhanda had authority to speak on behalf of himself and his co-owner, his wife, as to the characteristics of the premises and the making of the lease. Mrs. Dhanda testified she had participated in the enterprise, discussed it with her husband, but had left most of the negotiations to him. See *Gordon* v. *O'Brien,* 320 Mass. 739, 741-742 (1947); *Sztramski* v. *Spinale,* 332 Mass. 500, 503 (1955). See also, as to words or conduct of a principal from which a third party may infer authority of an agent, *Kanavos* v. *Hancock Bank & Trust Co.,* 14 Mass. App. Ct. 326, 331-332 (1982);

*Rubel* v. *Hayden, Harding & Buchanan, Inc.*, 15 Mass. App. Ct. 252, 255 (1983); *O'Malley* v. *Putnam Safe Dep. Vaults, Inc.*, 17 Mass. App. Ct. 332, 338 n.7 (1983). Compare *Weisman* v. *Saetz,* 11 Mass. App. Ct. 440, 442 (1981). Mrs. Dhanda's comparatively passive role was "not enough to negate the agency relationship and do[es] not, as matter of law, insulate her from liability." *Rousseau* v. *Gelinas, ante* 154, 158 (1987).

3. *Tardiness of cross appeal.* We dismiss Tri M's cross appeal because it was filed late. In relevant part, Mass.R.A.P. 4(a), as amended, 395 Mass. 1110 (1985), provides: "If a timely notice of appeal is filed by a party, any other party may file a notice of appeal within fourteen days of the date on which the first notice of appeal was filed . . . ." Judgment entered on July 15, 1985. The Dhandas filed a notice of appeal on August 13, 1985. Tri M's notice of appeal on the c. 93A count of its counterclaim was filed August 30, 1985 — three days late. There was no effort by Tri M to employ the escape hatch provided in Mass.R.A.P. 4(c), as appearing in 378 Mass. 929 (1979), which, upon a showing of excusable neglect, permits bringing before the trial court a motion to "extend the time for filing the notice of appeal by any party for a period not to exceed thirty days from the expiration of the time otherwise prescribed by this rule." See *Abbott* v. *John Hancock Mut. Life Ins. Co.,* 18 Mass. App. Ct. 508, 512-514 (1984); *Commonwealth* v. *Boutwell,* 21 Mass. App. Ct. 201, 205 (1985).

Parenthetically, we are of opinion that the trial judge correctly denied recovery to Tri M under c. 93A for the reasons set forth in his memorandum of decision.

The judgment on the counterclaim against the Dhandas is affirmed. The appeal from the judgment denying recovery to Tri M under c. 93A is dismissed.

*So ordered.*