## IN THE MATTER OF THE LIQUIDATION OF AMERICAN MUTUAL LIABILITY INSURANCE COMPANY & another.[1]

Suffolk. February 9, 1994. - May 10, 1994.

Present: WILKINS, ABRAMS, O'CONNOR, & GREANEY, JJ.

*Commissioner of Insurance. Insurance*, Insolvency of insurer. *Receiver. Practice, Civil*, Standing, Intervention.

The Commissioner of Insurance, appointed receiver of an insolvent insurance company, had exclusive authority pursuant to the provisions of G. L. c. 175, §§ 6 and 180C, to assert and settle claims on behalf of that company, subject to oversight and approval by a single justice of this court [729-731]; in addition, the receiver had the exclusive authority under those provisions to bring and settle claims that were common and not personal on behalf of policyholders and creditors, for the purpose of preserving the insolvent company's assets [731-734].

Certain insurance insolvency fund and insurance guaranty fund entities were not entitled to intervene as of right or by permission in a proceeding in this court conducted pursuant to G. L. c. 175, § 180C, in which a receiver was appointed to take charge of the liquidation of an insolvent insurance company, where the receiver had the sole and exclusive authority under the statute with respect to asserting and settling claims on behalf of the insolvent company [734-736]; however, those entities, including those seeking to intervene, that asserted a sufficient general interest in any proposed settlement were entitled to notice and an opportunity to be heard on the motion brought by the receiver requesting this court's approval of the settlement [736].

The standard to be applied by a single justice of this court in a proceeding under G. L. c. 175, § 180C, in considering a receiver's motion for approval of a settlement of claims on behalf of an insolvent insurance company is whether the settlement is fair and reasonable, after review of the information and materials upon which the receiver's settlement decision was based and after considering any written comments and oral argument from entities asserting a cognizable interest in the settlement. [736-739]

---

[1]American Mutual Insurance Company of Boston.

417 Mass. 724                                    725

In the Matter of the Liquidation of American Mutual Liability Insurance Co.

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on January 17, 1989.

The case was reported by *Nolan, J.*

*Thomas A. Barnico*, Assistant Attorney General (*Daniel W. Halston*, Assistant Attorney General, with him) for the Commissioner of Insurance.

*Joseph C. Tanski* (*Leonard G. Learner* with him) for Connecticut Insurance Guaranty Association & others, amici curiae.

The following submitted briefs for amici curiae:

*Christian M. Hoffman, Richard M. Brunell & Michael A. Albert* for Coopers & Lybrand.

*Linda A. Monica & Gordon F. Grimes*, of Maine, *Anthony R. Buonaguro & John Del Campo*, of Virginia, for National Organization of Life and Health Insurance Guaranty Associations.

*Thomas W. Jenkins*, of Illinois, *& James F. Kavanaugh, Jr.*, for National Conference of Insurance Guaranty Funds.

GREANEY, J. A single justice of this court has reserved and reported four questions concerning the settlement made by the Commissioner of Insurance (commissioner), acting as the permanent receiver (receiver) of American Mutual Liability Insurance Company and American Mutual Insurance Company of Boston (collectively, American Mutual) with Coopers & Lybrand (Coopers), the former certified public accountant and auditor of American Mutual. That settlement was before the single justice on the receiver's motion for approval of the settlement.

The background of the report is as follows. On March 9, 1989, after declaring that American Mutual was insolvent under the provisions of G. L. c. 175, § 180C (1992 ed.),[2] the

---

[2]The first paragraph of § 180C reads, in pertinent part, as follows:

"If the commissioner deems that a domestic company which is the subject of a rehabilitation proceeding under [§ 180B], or which may properly be the subject of such a proceeding for any cause referred to in said section, hereinafter referred to as the company, is insolvent and that it should be liquidated, he shall make application to the court for a decree authorizing him to liquidate the company. The court, after notice to all known creditors and stockholders of the company and a full hearing, may order

single justice sitting in the Supreme Judicial Court for Suffolk County appointed the commissioner as receiver with the authority to take possession and control of American Mutual, subject to any further order of the county court.[3] Shortly thereafter, the receiver retained the Worcester law firm of Bowditch & Dewey to investigate the circumstances leading to American Mutual's insolvency.

As part of its work, Bowditch & Dewey examined work papers and reports concerning the financial affairs of American Mutual that had been prepared by Coopers which served as American Mutual's independent certified public accountant and auditor from 1980 through 1988. During that inquiry, lawyers from Bowditch & Dewey conducted extensive interviews with individuals from Coopers who had made audits of American Mutual's financial affairs. The investigating lawyers also consulted extensively with actuarial experts, and with accountants from the firm which succeeded Coopers as American Mutual's auditor. Based on a review of relevant documents, and the recommendations made by Bowditch & Dewey, the receiver entered discussions with Coopers directed at the resolution of possible claims arising out of its auditing and accounting work for American Mutual. As a result of the discussions, the receiver executed a proposed settlement agreement with Coopers, which, among other matters, required Coopers to pay $3,750,000 to the estate of American Mutual and to provide the commissioner with "certain assurances and in-kind services" without charge. In exchange, the receiver agreed to release Coopers from liability on claims "that she, acting either as Commissioner of Insurance or as Permanent Receiver on behalf of [American

its liquidation and appoint the commissioner as permanent receiver thereof."

[3]There have been two commissioners during the pendency of this lawsuit. Kay Doughty was succeeded as Commissioner by Joseph Duffy who, by order entered in the county court on June 23, 1993, was appointed successor receiver. Since Ms. Doughty executed the proposed settlement documents and filed the motion for approval of the settlement, we will use the female pronoun in this opinion.

417 Mass. 724                                    727

In the Matter of the Liquidation of American Mutual Liability Insurance Co.

Mutual] or on behalf of [American Mutual] policyholders, claimants, and other creditors (including, without limitation, guaranty funds and insurance insolvency funds) has had, may now, or hereafter can, shall or may have."

The receiver then filed a motion for approval of the settlement agreement with the county court in keeping with the requirements of G. L. c. 175, § 180C (1992 ed.). In June, 1993, a number of State insurance guaranty funds and associations (funds), including the Massachusetts Insurers Insolvency Fund (MIIF),[4] sought to intervene in the receivership proceedings in order to file a separate complaint or claims against Coopers, to conduct discovery, and to object to the settlement. Shortly thereafter, the funds commenced an independent suit against Coopers in the Superior Court seeking damages for Coopers' allegedly negligent work for American Mutual. On August 10, 1993, the single justice denied the funds' motion to intervene "without prejudice" pending full court response to four questions which he reserved and reported. The questions are as follows:

---

[4]Besides MIIF, the following State guaranty funds and associations moved to intervene: Connecticut Insurance Guaranty Association, District of Columbia Insurance Guaranty Association, Illinois Guaranty Fund, Maine Insurance Guaranty Association, Minnesota Insurance Guaranty Association, New Hampshire Insurance Guaranty Association, New Jersey Property-Liability Insurance Guaranty Association, Rhode Island Insurers' Insolvency Fund, Vermont Property & Casualty Insurance Guaranty Association, and Virginia Property & Casualty Guaranty Association. Connecticut Insurance Guaranty Association asserts that, as a result of American Mutual's insolvencies, the funds have paid substantial claims under American Mutual policies, and that they anticipate paying additional substantial claims. The funds have filed their brief as amici curiae.

Additional amicus briefs have been filed by the National Conference of Insurance Guaranty Funds and the National Organization of Life and Health Insurance Guaranty Associations in support of the position taken by the funds and by Coopers in support of the receiver's position. While we do not ordinarily discuss arguments of amici curiae in deciding an appeal, see *Pineo* v. *Executive Council*, 412 Mass. 31, 35 n.6 (1992), we do so here because of the unusual nature of the case, its several issues of first impression, and the role of the amici advocating a position contrary to the one expressed by the commissioner acting as receiver.

"1. (a) Whether the Commissioner of Insurance acting as receiver for an insolvent insurer under [G. L. c. 175, § 180C], has sole authority to bring or 'compromise' on behalf of such insurer certain claims (asserted by the receiver to be 'choses in action') against such insurer's former independent auditor.

"(b) Whether the Commissioner of Insurance acting as receiver for an insolvent insurer under [G. L. c. 175, § 180C], has sole authority to bring or 'compromise' on behalf of such insurer's policyholders, claimants and other creditors certain claims (asserted by the receiver to be 'choses in action') against such insurer's former independent auditor.

"2. Whether [MIIF] created by G. L. c. 175D, and similar . . . funds, have standing to object to such receiver's proffered compromise of the claims referred to in questions 1 (a) and 1 (b).

"3. Whether [MIIF] and similar . . . funds should be joined as parties to the proceedings on the petition for approval of compromise.

"4. Whether the standard of judicial review applicable to the Single Justice's 'approval' of the 'compromise' is (a) (as proposed by the Commissioner) whether, on the face of the settlement agreement and supporting papers, the compromise is free from any error of law and not arbitrary and capricious or (b) (as proposed by the [MIIF] and similar . . . funds) whether, on the basis of all relevant facts, the compromise is in the best interest of the estate and its creditors or (c) such other standard as the Supreme Judicial Court for the Commonwealth shall determine."

417 Mass. 724                                                729

In the Matter of the Liquidation of American Mutual Liability Insurance Co.

As has been noted, the funds have been permitted to make their arguments in the case as amici curiae. See note 4, *supra*.

1. Reported question 1 seeks advice on the scope of the receiver's authority to bring, and settle subject to court approval, claims against an insolvent insurer's accountant and auditor. The question has two parts, asking first, whether the commissioner, acting as permanent receiver, has exclusive authority to bring or settle claims against Coopers "on behalf of [American Mutual]," and, second, "on behalf of [American Mutual's] policyholders, claimants and other creditors."

The receiver's authority emanates principally from G. L. c. 175, §§ 6 and 180C (1992 ed.). Section 6 authorizes the receiver appointed for an insolvent insurer "to take possession of all the property and effects of the company, to settle its affairs, and to distribute its assets, subject to such rules and orders as the court may prescribe." Section 180C provides that, after entry of a liquidation order and "[s]ubject to the approval of the court, [the receiver] may sell or otherwise dispose of the real and personal property, or any part thereof, and sell or compromise all choses in action, of the company." In conformity with these statutes, there was entered in the county court an order of liquidation which directed the receiver, "to liquidate [American Mutual] as provided in and subject to [G. L. c. 175, § 180C], to take possession of, with the authority to transfer and control, the property, records, accounts, and effects of [American Mutual], to settle the affairs and distribute the assets of [American Mutual] subject to such rules and orders as the Court or some Justice hereof may prescribe."

a. With specific reference to question 1 (a), we agree with the commissioner that, as receiver, she had the exclusive authority to assert against Coopers, and to settle, subject to ultimate approval by the court, any claims that American Mutual may have had against Coopers. American Mutual had claims that Coopers, as its accountant and auditor, had provided negligent services causing American Mutual damage. Those claims clearly constituted a "chose in action," in the

sense of a potential lawsuit, as that term is used in § 180C. With respect to power, § 6 of G. L. c. 175, confers on the receiver of an insolvent insurer broad authority to "settle its affairs," and § 180C expressly allows the receiver to "compromise *all* choses in action (emphasis supplied)." While the statutes do not use the word "exclusive" when speaking of the receiver's authority, their obvious import is to the effect that the receiver's power is paramount, subject to oversight and approval by the county court. See *Corcoran* v. *Frank B. Hall & Co.*, 147 A.D.2d 165, 170-171 (N.Y. 1989); *Foster* v. *Peat Marwick Main & Co.*, 138 Pa. Commw. 147, 155 (1991).

In reaching this conclusion, we reject the argument made by the funds that they also have the power to bring any claims American Mutual may have had against Coopers. MIIF bases its argument on G. L. c. 175D, §§ 5 (1) (*b*) and 8 (1) (1992 ed.) (the funds base their argument on similar statutes and laws that apply to them). Section 5 (1) (*b*) of G. L. c. 175D provides that MIIF shall "be deemed the insurer to the extent of its obligation on . . . covered claims and shall have all rights, duties and obligations of the insolvent insurer to such extent."[5] Section 8 (1) of G. L. c. 175D provides that "[a]ny person recovering under this chapter shall be deemed to have assigned his rights under the policy to [MIIF] to the extent of his recovery from [MIIF] . . . ." MIIF and the funds maintain that these and like provisions give them all rights held by American Mutual to the extent of their total financial obligations on covered claims.

These provisions, which must be considered in light of the definition of "covered claims," just noted, are principally designed to subrogate the funds to any rights the policyhold-

---

[5]Section 1 of G. L. c. 175D defines a "[c]overed claim" as "an unpaid claim, including one for unearned premiums, which arises out of and is within the coverage of an insurance policy to which this chapter applies issued by an insurer, if such insurer becomes an insolvent insurer and (*a*) the claimant or insured is a resident of the commonwealth; or (*b*) the property from which the claim arises is permanently located in the commonwealth."

417 Mass. 724 · · 731

In the Matter of the Liquidation of American Mutual Liability Insurance Co.

ers of American Mutual may have had with respect to claims paid by the funds under the policies.[6] We do not consider the provisions as authorizing the funds to assert a right held by American Mutual which passed by law to the receiver. To accept such a result would substantially undermine the reasonably specific and broad language of G. L. c. 175, §§ 6 and 180C, and create a potential morass of lawsuits involving the receiver, and potentially up to fifty funds, in which many seek to assert, as a representative of American Mutual, the latter's claims against Coopers for alleged negligent services.

b. Question 1 (b) asks whether the receiver has sole authority to bring and settle claims "on behalf of" American Mutual's policyholders, claimants, and creditors. We conclude that the receiver has sole authority to the extent that she is settling common claims.

"The weight of authority makes it clear that a statutory receiver, such as the [receiver] here, may prosecute claims on behalf of creditors and policyholders of the insolvent [insurance] company in order to preserve its estate assets, but may not maintain a suit in such a representative capacity if it is strictly personal in nature, that is, if the cause of action belongs clearly to the individual creditor or policyholder." *Matter of the Liquidation of Integrity Ins. Co.*, 240 N.J. Super. 480, 491 (App. Div. 1990). See *Corcoran* v. *Frank B. Hall & Co.*, *supra* at 177 (receiver has authority to prosecute claims on behalf of creditors); *Foster* v. *Peat Marwick Main & Co.*, *supra* at 151-155 (insurance commissioner, as rehabilitator of insolvent insurer, had authority to assert claim against insurer's auditor on behalf of insurer, all policyholders and insurers, creditors, and interested parties alleging malpractice, breach of contract, and misrepresentation).

The nature of the distinction has been discussed in *Cotten* v. *Republic Nat'l Bank*, 395 S.W.2d 930 (Tex. Civ. App. 1965). In that decision, the court held that a receiver could

---

[6] For example, a fund might have the right to pursue a third-party action on behalf of an employee who had received workers' compensation benefits, on the basis of a workers' compensation insurance policy issued by American Mutual. See G. L. c. 152, § 15 (1992 ed.).

sue to recover assets of an insolvent insurer on behalf of creditors and policyholders, but could not maintain a suit as the representative of a policyholder or creditor who claimed that he or she had been induced by fraud to invest in the insurer. In reaching its conclusion, the court said (*id.* at 941) the following:

> "Certainly a receiver for an insolvent insurance corporation . . . has a right to maintain a suit which is necessary to preserve the corporation's assets and to recover assets of which the corporation has been wrongfully deprived through fraud. In such a suit the receiver may be said to sue as the representative of the corporation and its creditors, stockholders and policyholders, for they have an interest in the corporation's assets and upon liquidation they are entitled to a proper distribution of the assets.

> "But some actions for fraud are by their nature personal to each creditor, or each stockholder, or each policyholder, and the receiver may not then maintain a suit in his representative capacity for their joint benefit. In such case each claimant and he alone may bring and maintain the suit himself, for the action is personal, separate and several, not joint, and extends no further than the individual loss of each particular creditor who sues. For example, one who proves that he relied on false representations as to the corporation's financial condition and was thereby induced to extend credit to the corporation, or to purchase stock in it, or to take out an insurance policy with it, must in his own name maintain a separate suit for his damages against the person who uttered the fraudulent representations. The aggrieved party and he alone may maintain the suit."

The same point was made in *In re W. World Funding, Inc.*, 52 B.R. 743, 774-775 (Bankr. D. Nev. 1985). There the court said, quoting 3A Fletcher, Law of Private Corporations § 1134, at 202 (rev. perm. ed. 1984), that:

" 'The dividing line is whether the cause of action is one which is purely personal, in which no other claimant or creditor of the corporation has an interest, or whether the cause of action is one in favor of creditors in general . . . .' Where the injury alleged is primarily to the corporation, and is an injury to the plaintiff creditor only insofar as it decreases the assets of the corporation to which he must look for satisfaction of his debt, then the suit is for a tort suffered by the corporation, and properly brought by the trustee; if there is a special damage to the creditor suing, not common to other creditors, then it is a personal creditor action which the trustee may not pursue."

It appears the distinction between common claims, which a receiver has exclusive authority to settle on behalf of policyholders and creditors, and personal claims, which a receiver cannot settle, is a basic one. Without the exclusive right in the receiver to settle common claims, resulting litigation could be endless. We accept the distinction and next apply it to reported question 1 (b).

The funds devote a considerable portion of their common briefs to arguing that they have personal claims against Coopers which are distinct from common claims held by creditors or policyholders. We need not consider the argument. In agreeing to settle with Coopers, the receiver was cognizant of, and accepted, the distinction between common claims and personal claims discussed above. In her reply brief, "the [r]eceiver concedes that she lacks authority to bring or compromise a claim [against American Mutual] on behalf of a creditor [or policyholder] where the claim depends on facts specific to the creditor [or policyholders] and the recovery will only benefit that creditor [or policyholder]." The receiver also stated in her affidavit in support of the motion to approve the settlement that she intended to compromise only common claims against Coopers on behalf of American Mutual, and its policyholders and creditors, for the benefit of the estate, and that the language of the settle-

ment agreement should be so construed. Nothing in question 1 (b) asks us to determine whether any fund has a valid personal claim, in the sense of the fund having incurred special damage as the result of alleged wrongful conduct on the part of Coopers which could be found to have been directed at that fund.[7] In response to question 1 (b), a sufficient response is that the receiver had the exclusive authority to settle common claims against Coopers on behalf of policyholders and creditors of American Mutual and that, by her own admission, she purports to act only to settle those claims.

2. Questions 2 and 3 ask whether the funds have "standing to object" to the settlement, and whether they "should be joined as parties to the proceedings" on the motion seeking its approval. The questions stem from the application by the funds to intervene as full scale litigants in the proceeding. That application was brought pursuant to Mass. R. Civ. P. 24 (a) and (b), 365 Mass. 769 (1974), and sought intervention as of right or, at least, by permission. The memorandum of law and affidavits filed in support of the application by the funds indicate that they sought to be admitted as parties to the settlement proceedings, so they could file an independent complaint or complaints, engage in discovery, acquire evidence, and make objections to the receiver's motion for approval. As previously noted, the application to intervene was denied by the single justice "without prejudice," and questions 2 and 3 were framed to resolve the issue of the extent of participation by the funds on the motion seeking approval. Questions 2 and 3 can be considered together.

We agree with the receiver that the issue of intervention of the funds is legally inseparable from the question of exclusive

---

[7]We note, however, that based on the funds' own account of one claim they assert against Coopers, that claim would appear to be a "common claim" as we have used that term. This claim is based on the assertion that Coopers' allegedly negligent auditing practices, and the reports sent to the Division of Insurance, permitted American Mutual to remain in business despite a lack of adequate loss reserves, thereby causing losses to policyholders, and perhaps others. However, issues concerning the adequacy of the funds' complaint in Superior Court must be resolved, in the first instance, by that court.

417 Mass. 724             735

In the Matter of the Liquidation of American Mutual Liability Insurance Co.

authority to bring and settle claims held by American Mutual and common claims. Having already concluded that the receiver, acting under G. L. c. 175, §§ 6 and 180C, has the exclusive authority to settle claims held by American Mutual and common claims against Coopers on behalf of policyholders and creditors, it follows logically that the funds should not be made parties to the approval proceeding.

This conclusion is not altered by the fact that MIIF and the funds have, for example, the right to sue (see, as to MIIF, G. L. c. 175D, §§ 3 and 5 [d] [2] (1992 ed.]), the right to file claims against the estate (see, as to MIIF, G. L. c. 175D, § 8 [1992 ed.], and as to the funds, G. L. c. 175, § 180F [1992 ed.]), the right to receive disbursements from the receiver (see G. L. c. 175, § 180C, third par. [1992 ed.]), and other statutory rights and obligations. The rights that the funds possess against the estate are distinct from the right to pursue claims held by American Mutual and common claims to recover assets for the estate. This latter right is exclusive to the receiver. In substance, the receiver in this type of insolvency proceeding acts as the virtual representative of the funds for the purpose of settling any claim held by American Mutual or any common claims against Coopers.[8] While MIIF and the funds possess a general interest in the settlement which we think entitles them to notice and an op-

---

[8]Under the doctrine of virtual representation, a nonparty can be represented in litigation by a party to that litigation. See generally *Morganelli v. Building Inspector of Canton*, 7 Mass. App. Ct. 475, 481-488 (1979). In *Morganelli*, the Appeals Court referred to and applied the branch of the virtual representation doctrine that holds that "a person [is] represented by a party who is '[a]n official or agency invested by law with authority to represent the person's interests.'" Restatement (Second) of Judgments § 85 (1) (d) (Tent. Draft No. 2, 1975), quoted in part in *Morganelli v. Building Inspector of Canton*, *supra* at 484. Here, G. L. c. 175, §§ 6 and 180C, vest the commissioner, a public official, with exclusive authority to bring and settle claims held by American Mutual and common claims of its creditors and policyholders. See *In re Medomak Canning*, 922 F.2d 895, 901 (1st Cir. 1991)(bankruptcy trustee could bind unsecured creditors "based upon such identification of interests between the Trustee and [unsecured creditors] that the Trustee was acting as their virtual representative"); *Corcoran v. Frank B. Hall & Co.*, 149 A.D.2d 165, 175-177 (N.Y. 1989).

portunity to be heard, they do not have an interest sufficient to require that they be made parties to the approval motion. The application to intervene should be denied without qualification.

3. The fourth and last reported question asks what standard the single justice should apply in reviewing the receiver's motion for approval. The receiver argues that the single justice should determine only "whether, on the face of the settlement agreement and supporting papers, the compromise is free from any error of law and not arbitrary and capricious." This suggested standard copies an abuse of discretion standard, commensurate with the commissioner's role as an administrative officer of the Commonwealth. On the other hand, the funds argue that the standard should be whether, "on the basis of all relevant facts and after considering the objections of any interested party, the compromise is in the best interest of the receivership estate and its creditors." General Laws c. 175, § 180C, does not express any particular standard to guide a single justice in considering the question.

We conclude that the funds have a general interest which allows them to appear and comment on the receiver's motion for approval. As has been previously indicated, the funds do not possess rights which would dictate that they be made parties to the proceedings. Under G. L. c. 175, § 180C, third par., however, the funds will, most likely, receive some distributions from the estate, and amounts recovered from Coopers may be distributed to satisfy obligations of the funds under their respective statutes. The funds also received notice of the receiver's motion to approve the settlement. That notice directed "any person who intends to object to the motion . . . [to] file [an] objection, in writing, together with any supporting papers" within a specified time. Notice and the right to object, such as was given to the funds, usually implies an opportunity to be heard on the propriety of the subject of the notice, here the proposed settlement.

As to the governing standard, we agree with the receiver that her regulatory function as commissioner requires some

417 Mass. 724 737

In the Matter of the Liquidation of American Mutual Liability Insurance Co.

acknowledgement of her expertise and discretion. The receiver, qua commissioner, is not, for example, in the same position as a bankruptcy trustee, who serves no regulatory role. On this issue, bankruptcy cases referred to by the funds are not entirely on point. On the other hand, as receiver, the commissioner is not acting strictly in a regulatory capacity, but rather in the capacity of representative of American Mutual's estate which invokes the interests of its policyholders and creditors. We note here that the proposed settlement agreement states the commissioner's view that the settlement "is in the best interests of . . . [American Mutual's] [c]reditors," and also that G. L. c. 175, § 180C, requires that a proposal submitted by a receiver for assumption of an insolvent insurer's policies by a solvent insurer be "the best proposal in the interest of the policyholders." The commissioner's role as receiver is not one that calls on either her expertise or her discretion in the same way as does her role as commissioner.

We conclude that the abuse of discretion standard advocated by the receiver is insufficient. We think the receiver should demonstrate that the settlement with Coopers is fair and reasonable. In doing so, the receiver is entitled to, and indeed must, take into account all the considerations that go into a decision to settle a potential lawsuit. Without limitation, these considerations include such factors as the strength of the receiver's claims against Coopers, the time that would be spent in litigation of the claim, the costs and expenses that would be incurred, and the expected outcome.[9] The single

---

[9]The record indicates that Coopers vigorously disputes its liability. Further, many of the legal issues pertaining to accountant liability are not yet resolved in Massachusetts. Some of the unresolved issues include whether auditors' representations are best characterized as opinions or as statements of fact; whether privity and reliance standards specific to auditors should be required by Massachusetts courts as they have been by New York and California courts; see *Bily* v. *Arthur Young & Co.,* 3 Cal. 4th 370, 381 (1992); *Security Pac. Business Credit, Inc.* v. *Peat Marwick Main & Co.,* 79 N.Y.2d 695, 703 (1992); whether compliance with generally accepted auditing standards satisfies an accountant's duty of care; and whether contributory or comparative negligence defenses are applicable, see *Dhanda* v. *Tri M, Ltd.,* 24 Mass. App. Ct. 700, 703-704 (1987).

738                                                            417 Mass. 724

In the Matter of the Liquidation of American Mutual Liability Insurance Co.

justice should review the receiver's evaluation of these, and other relevant factors to determine whether the terms of the settlement with Coopers are fair and reasonable.[10] In that examination, the single justice may give such weight as he or she considers appropriate to the receiver's expertise as commissioner. The receiver's role as commissioner does not, however, completely override an obligation to American Mutual; she should keep her role as receiver independent of her role as commissioner.[11]

To perform review effectively, the single justice should be provided with the information on which the receiver's decision to settle was based. The receiver's conclusory statement in her affidavit supporting approval, that the settlement was "a reasonable exercise of [her] authority" is not enough. The receiver should open her records for scrutiny. Since the single justice's review of those materials can be assisted by the funds' opportunity to comment on the proposed settlement, they also should have access to the information on which the receiver relied as the basis for investigating Coopers. The funds should be afforded an opportunity to submit written

---

[10]These requirements do not differ greatly from the receiver's own view. In her affidavit in support of the approval of the settlement, she states the following:

> "Based on my review of [Coopers'] conduct in this matter, the costs and risks of litigation, and the best interests of the estate of [American Mutual], its policyholders and other creditors, I believe that the settlement of the claims against [Coopers] described above is a reasonable exercise of my authority under G. L. c. 175 and the liquidation order of this Court dated March 9, 1989."

[11]The settlement agreement states that, as part of the compromise, Coopers will provide "without charge" to the commissioner, "certain assurances and in-kind services." The agreement goes on to state that these assurances and services "shall serve to enhance the [Division of Insurance's] ability to oversee and examine insurance companies operating in the Commonwealth of Massachusetts." The single justice should examine this aspect of the settlement to see if it is fair to the funds. It may be that the assurances and services provide a benefit the commissioner should retain in view of her work on the receivership. It may also be that whatever is derived from the assurances and services could be shared with the funds who may have similar need to improve their ability to oversee and examine insurance companies in their jurisdictions.

comments and to participate in oral argument regarding the propriety of the settlement.[12] Coopers should also have an opportunity to comment on the reasonableness of the settlement from its point of view.

The single justice will possess broad and discretionary authority with respect to approval. The single justice may also be called on to decide any dispute regarding the information that is to be made available by the receiver. As a matter of informed discretion, the single justice may approve the settlement in its entirety, or disapprove it, or approve any part and reject the rest. The case is remanded to the county court for further proceedings consistent with this opinion.

*So ordered.*

---

[12]To the extent that the funds have any cognizable interests to assert, these procedures are sufficient to protect their due process rights. See *Matter of the Liquidation of Integrity Ins. Co.*, 240 N.J. Super. 480, 497-498 (1990).