**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**June 12, 2013**

# In the Court of Appeals of Georgia

A13A0667. SUPERIOR ROOFING COMPANY OF GEORGIA, MI-037
INC. et al. v. AMERICAN PROFESSIONAL RISK
SERVICES, INC. et al.

MILLER, Judge.

Superior Roofing Company of Georgia, Inc. and Ron Herring (collectively "Plaintiffs") filed suit in Fulton County against American Professional Risk Services, Inc. ("AmPro"), and several AmPro employees (collectively the "Defendants"), raising claims of breach of contract, negligence, negligent misrepresentation, breach of fiduciary duty, fraud, and an action in equity in relation to AmPro's administration of the Roofing and Sheet Metal Contractors Association of Georgia Workers Compensation Trust Fund (the "Trust Fund"). The Superior Court of Fulton County subsequently placed the Trust Fund under permanent receivership and appointed the Georgia Insurance Commissioner as permanent receiver of the fund. The trial court

granted the Defendants' motion to dismiss, concluding that the Insurance Commissioner had exclusive standing to prosecute the Plaintiffs' claims. On appeal, the Plaintiffs contend that the Insurance Commissioner did not have exclusive standing to prosecute their claims. Whether an appointed receiver of an insolvent trust fund has exclusive standing to prosecute the claims of the fund's members and policyholders is an issue of first impression. Based on the statutory framework designed to protect the interests of the members and policyholders, we conclude that the Insurance Commissioner, as the receiver in this case, has the exclusive authority to prosecute legal claims that are common to the Trust Fund, and that the Plaintiffs have standing to prosecute claims that are personal in nature and not common to the Trust Fund. Accordingly, we reverse.

Under OCGA § 9-11-12 (b) (6), a motion to dismiss for failure to state a claim upon which relief can be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor.

2

(Citation and punctuation omitted.) *Anderson v. Daniel*, 314 Ga. App. 394, 395 (724 SE2d 401) (2012).

So viewed, the complaint alleged that the Trust Fund, a self-insured workers compensation fund whose members were roofing contractors, was licensed by the Georgia Insurance Department in 1994. In 1997, the Trust Fund entered into an agreement for services with AmPro (the "Agreement"), providing that AmPro was to administer the workers compensation trust fund in accordance with Georgia law and all applicable regulations. The Agreement specifically provided that AmPro was to determine estimates of the possible cost to the Trust Fund; prepare periodic reports requested by the Georgia Workers Compensation Board or other regulatory authority; and provide a monthly Risk Management Information Systems Report that estimated the future costs of each open claim.

The complaint further alleged that the Trust Fund was not a viable insurance vehicle at any time after 2008 because the Defendants systematically and grossly under-reserved for known claims, provided materially inaccurate and misleading information to an actuary, and prepared inaccurate financial statements. Specifically, AmPro represented in September 2009 that the Trust Fund had a surplus of $802,284. Several months later, AmPro represented that the Trust Fund had a deficit of

3

$1,154,094. AmPro subsequently conceded that the September 2009 financial statement was wildly inaccurate and overstated. Although AmPro represented to Trust Fund members that the Trust Fund was in compliance with all Georgia regulatory requirements, the Trust Fund was actually out of compliance with Georgia law and insurance regulations when it ran a negative balance and under-reserved for known claims. Superior Roofing relied upon Defendants' financial statements and other representations regarding the Trust Fund to renew its workers compensation insurance and to continue to pay its insurance premiums.

The Trust Fund closed in April 2010 and began to assess its members. Superior Roofing had to pay a $91,375 assessment and may be subjected to additional assessments.

Superior Roofing subsequently brought this suit. In a related case,[1] the superior court entered a consent order of permanent injunction and appointment of permanent receiver that placed the Trust Fund into permanent receivership and named the Insurance Commissioner as the receiver. Defendants filed their motion to dismiss. Thereafter, the Insurance Commissioner filed a motion to intervene as plaintiff and

---

[1] *State of Georgia, Ex. Rel., Ralph T. Hudgens, Commissioner v. Roofing and Sheet Metal Contractors Association of Georgia Workers' Compensation Trust Fund*, Civil Action No. 2011-CV-19722.

4

a brief in support of the Defendants' motion to dismiss. The Defendants and the Insurance Commissioner both argued that the Insurance Commissioner had exclusive standing to prosecute the Plaintiffs' claims. The superior court granted the Defendants' motion to dismiss, concluding that the Insurance Commissioner, as the appointed receiver of the Trust Fund, represented the interests of the fund's creditors and members, and that it was the receiver's right to determine which causes of action to pursue on behalf of interested parties.

On appeal, the Plaintiffs contend that the trial court erred in dismissing their appeal on the ground that the Insurance Commissioner, as receiver of the Trust Fund, had the exclusive right to prosecute their claims against the Defendants . We agree.

Under OCGA § 34-9-168, the Superior Court of Fulton County has the authority to enjoin a self-insured workers' compensation trust fund from conducting any further business when, among other things, the fund has failed to comply with Workers' Compensation statutory provisions or is unable to meet its financial obligations and claims. The superior court also has the authority to make the injunction permanent and to appoint a receiver of the Trust Fund to take possession of the insolvent fund and liquidate its assets. OCGA §§ 34-9-168. There is no dispute

5

that the superior court was authorized in this case to appoint the Insurance Commission as receiver of the Trust Fund.

The liquidation of an insolvent fund, such as the one in this case, shall proceed "in the same manner as domestic insurers under [the Insurers Rehabilitation and Liquidation Act ("IRLA")]; and the Commissioner shall have the same powers and limitations in such proceedings as provided under [the IRLA], except as otherwise provided for in this article." OCGA § 34-9-173 (b); see also OCGA § 33-37-1 (a). The legislature enacted the IRLA for the "protection of the interests of the insureds, claimants, creditors, and the public generally[.]" OCGA § 33-37-1 (d). To achieve the IRLA's purpose, the legislature designed the IRLA to, among other things, enhance the efficiency of liquidation and minimize legal uncertainty and litigation. OCGA § 33-37-1 (d) (3). The IRLA mandates that its provisions be liberally construed to effect its purpose to protect the interests of policyholders, claimants, creditors, and the public generally. OCGA § 33-37-1 (c).

We note that the statutory scheme here has conferred extensive authority upon the receiver, as a liquidator of a insolvent fund, to carry out the purpose of the IRLA. See OCGA § 33-37-20 (providing an nonexclusive list of powers the liquidator shall

6

exercise); see also 1 Couch on Insurance, § 5:37 (3d Ed. 2012). Specifically, when

liquidating a fund, the receiver shall have the authority

> (14) To continue to prosecute and to institute in the name of the insurer or in his own name any and all suits and other legal proceedings . . . and to abandon the prosecution of claims he deems unprofitable[;]
>
> [and]
>
> (15) To prosecute any action which may exist on behalf of creditors, members, policyholders, or shareholders of the insurer against any officer of the insurer or any other person[.]

Relying on OCGA § 33-37-20 (a) (14) and (15), the Defendants contend that

the authority vested in the receiver to prosecute the claims of the Trust Fund and its

members is exclusive.

> In construing a statute, the courts must try to effectuate the intent of the legislature as discerned from the act as a whole. The intent of the General Assembly will control over the literal meaning of those terms which appear in the statute. Where a law is susceptible of more than one construction, it must be given that construction which is most equitable and just.

(Citations and punctuation omitted.) *Randolph County v. Bantz*, 270 Ga. 66, 67 (508

SE2d 169) (1998).

While OCGA § 33-37-20 grants authority to the Insurance Commissioner to

act on behalf of the Trust Fund and its members, including the power to prosecute the

7

claims of its members and policyholders, nothing in the plain language of OCGA §

33-37-20 states that this authority is exclusive. Neither party cited, nor have we

found, any Georgia cases directly on point regarding the right of a member of a self-

insured fund to initiate and prosecute its own claims. Accordingly, we look to

authority from other jurisdictions that have adopted provisions similar to the IRLA.

> The weight of authority makes it clear that a statutory receiver, such as the [l]iquidator here, may prosecute claims on behalf of creditors and policyholders of the insolvent company in order to preserve its estate assets, but may not maintain a suit in such a representative capacity if it is strictly personal in nature, that is, if the cause of action belongs clearly to the individual creditor or policyholder.

(Citation and punctuation omitted.) *Boedeker v. Rogers*, 746 N.E.2d 625, 638 (III) (B)

(Ohio Ct. App. 2000); *see also In the Matter of the Liquidation of American Mutual*

*Liability Insurance Company*, 632 N.E.2d 1209, 1213-1214 (1) (b) (Mass. 1994); *In*

*the Matter of the Liquidation of Integrity Ins. Co.*, 573 A.2d 928, 933-935 (N.J. App.

Ct. 1990); *Cotten v. Republic Nat'l Bank*, 395 S.W.2d 930, 941 (II) (Tex. App. 1965).

Notably, one authority states:

> [t]he insurance commissioner acting as liquidator of an insolvent insurance company may, and under some circumstances must, pursue any litigation that *has the potential of increasing the assets of the company. . . .* The commissioner may also instigate a lawsuit against the directors and officers of the insurer for breach of fiduciary duty or violations of the Racketeer Influenced and Corrupt Organizations Act.

8

. . . The commissioner can sue for the recovery of assets fraudulently transferred. The commissioner can bring suit on behalf of the insured's members, creditors, policyholders, shareholders, and annuitants. However, *a liquidator does not have the authority to prosecute claims that are strictly personal in nature; namely, the claims that belong to an individual creditor or policyholder.*

(Punctuation and footnotes omitted; emphasis added.) 1 Couch on Insurance, supra,

§ 5:39. Moreover, as one court explained:

Certainly a receiver for an insolvent insurance corporation . . . has a right to maintain a suit which is necessary to preserve the corporation's assets and to recover assets of which the corporation has been wrongfully deprived through fraud. In such a suit the receiver may be said to sue as the representative of the corporation and its creditors, stockholders and policyholders, for they have an interest in the corporation's assets and upon liquidation they are entitled to a proper distribution of the assets.

But some actions for fraud are by their nature personal to each creditor, or each stockholder, or each policyholder, and the receiver may not then maintain a suit in his representative capacity for their joint benefit. In such case each claimant and he alone may bring and maintain the suit himself, for the action is personal, separate and several, not joint, and extends no further than the individual loss of each particular creditor who sues. For example, one who proves that he relied on false representations as to the corporation's financial condition and was thereby induced to extend credit to the corporation, or to purchase stock in it, or to take out an insurance policy with it, must in his own name maintain a separate suit for his damages against the person who uttered the fraudulent representations. The aggrieved party and he alone may maintain the suit.

9

(Punctuation omitted.) *Cotten*, supra, 395 S.W.2d at 941 (II). Furthermore, "[w]hen pursuing claims on behalf of the insurer's creditors, members, policyholders, or shareholders, the [receiver] is in truth advancing those claims on behalf of the insurer so that the insurer's obligations may be extinguished. A [policyholder's] direct claim against an officer or director, by contrast, is personal to the [policyholder] and is not on behalf of the insurer." *Boedeker*, supra, 746 N.E.2d at 640 (III) (B).[2] In other words, if the claim is personal and any recovery thereon will not benefit the estate of the insolvent insurance company, the receiver may not prosecute the claim.[3]

_____

[2] The common line of authority holds that

[t]he dividing line is whether the cause of action is one which is purely personal, in which no other claimant or creditor of the corporation has an interest, or whether the cause of action is one in favor of creditors in general. Where the injury alleged is primarily to the corporation, and is an injury to the plaintiff creditor only insofar as it decreases the assets of the corporation to which he must look for satisfaction of his debt, then the suit is for a tort suffered by the corporation, and properly brought by the trustee; if there is a special damage to the creditor suing, not common to other creditors, then it is a personal creditor action which the trustee may not pursue.

(Punctuation omitted.) *American Mutual*, supra, 632 N.E.2d at 1214 (quoting 3A Fletcher, Law of Private Corporations, § 1134, at 202 (rev. perm. ed. 1984)).

[3] The Defendants rely on an unpublished case from Tennessee that upheld the trial court's dismissal of a suit brought by a member of a self-insured workers' compensation fund against the administrator. See *Western Express, Inc. v. Brentwood*

We find the weight of this authority to be persuasive and adopt the reasoning therein. Consequently, we conclude that the Insurance Commissioner, as the receiver in this case, has the exclusive authority to prosecute legal claims that are common to the Trust Fund, and that the Plaintiffs were not prohibited from pursuing their personal claims. This conclusion provides the most equitable and just construction of the receiver's powers under the IRLA. In particular, we are required to liberally construe the provisions of the IRLA to effect its purpose of protecting the interests of insureds, like the Plaintiffs. See OCGA § 33-37-1 (c). Giving the receiver exclusive authority to prosecute claims may not always serve the interests of the insureds, because nothing in the IRLA statutory scheme requires that the receiver prosecute the personal claims of the Trust Fund members or policyholders. See OCGA § 34-9-173 (b); OCGA § 33-37-1 (d). Moreover, the members or policyholders are statutorily barred from asserting *any* action against the receiver,

*Svcs., Inc.*, No. M2008-02227-COA-R3-CV, 2009 WL 3448747 (Tenn. Ct. App. Oct. 26, 2009). That case, however, does not support the Defendants' argument that the Insurance Commissioner has exclusive authority to bring claims of the members and policyholders in this case. The Court of Appeals of Tennessee expressly recognized that a liquidator had the statutory authority to bring the common claims of its members and policyholders, but lacked the authority to raise claims that were strictly personal in nature. Id. at *8. The Tennessee Court of Appeals affirmed the trial court's dismissal in *Western Express* because, unlike the superior court here, the trial court considered whether the plaintiff's claims were common or personal. Id. at *8-9.

OCGA § 33-37-23 (a), and, therefore, cannot compel the receiver to prosecute their personal claims. Thus, if we were to conclude that the Insurance Commissioner, as the receiver, had the exclusive authority to prosecute all claims of the Trust Fund members and policyholders, the members and policyholders would have no recourse to pursue claims that the Insurance Commissioner, in his broad discretion, declined to prosecute. Similarly, we find no statutes indicating that personal claims abandoned by the receiver would revert back to the fund's members or policyholders. Compare *Richards v. D.R. Horton, Inc.*, ___ Ga. App. ___, *2 (2) (Case No. A12A1814, decided March 26, 2013) (noting that under bankruptcy law, once a bankruptcy trustee, who has exclusive standing to prosecute a debtor's legal claims, abandons those claims, the debtor had standing to pursue his personal claims).

We note that in its order appointing the Insurance Commissioner as receiver, the superior court also enjoined any action at law or equity against the Trust Fund or the Insurance Commissioner. However, the trial court did not enjoin actions against AmPro, the former manager of the Trust Fund, or its employees. Likewise, while the superior court enjoined anyone from transferring the assets of the Trust Fund without the Insurance Commissioner's express permission, nothing in the injunction precludes the Plaintiffs from seeking damages against AmPro.

Since the superior court dismissed the action on the ground that the Plaintiffs had no authority to pursue any claims, it did not address whether any of the alleged injuries suffered by the Plaintiffs were personal or common in nature. We decline to resolve this issue in the first instance, and return the case to the superior court for a determination of which of the Plaintiffs' claims are personal or common to the Trust Fund.

*Judgment reversed. Barnes, P. J., and Ray, J., concur.*